[No. 14438-1-II.   Division Two.   November 19, 1992.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT LESLIE
LADENBURG, JR., *Appellant.*

*Thomas D. Dinwiddie,* for appellant.

*Norm Maleng, Prosecuting Attorney for King County,* and *Greg R. Hubbard, Assistant Chief Deputy,* for respondent.

ALEXANDER, J. — Robert Leslie Ladenburg, Jr., appeals his juvenile court conviction on a charge of second degree robbery, contending that the trial court erred in denying his motion to disqualify the Pierce County Prosecuting Attorney and the prosecutor's office from handling the prosecution of charges against him. He claims, in addition, that his conviction should be reversed because the Pierce County Prosecutor's office violated the appearance of fairness doctrine by not excusing itself from the prosecution of the case. We affirm.

Robert L. Ladenburg, Jr., is the nephew of Pierce County Prosecuting Attorney John Ladenburg. Ladenburg, Jr., was charged in Pierce County Juvenile Court with one count of second degree robbery. The State alleged that Ladenburg, Jr., struck a person by the name of Paul Anderson and then took money from him.

On the morning of the day Ladenburg, Jr., was to go to trial on the charge, he filed a motion to disqualify the Pierce County Prosecutor's office from prosecuting the case against him. He alleged that it would be a conflict of interest and a violation of the appearance of fairness doctrine for anyone in that office to handle the prosecution because the elected prosecuting attorney, John Ladenburg, was his uncle. The State of Washington, represented by a deputy in the Pierce County Prosecutor's office, resisted the motion. It was denied.

Ladenburg, Jr., was convicted of the charge.[1] He was sentenced to a standard range sentence of 52 to 65 weeks.

---

[1] Ladenburg, Jr., contended at trial that his altercation with Anderson was the result of a prior incident where Anderson had threatened him with a gun. He

On appeal, Ladenburg, Jr., contends that (1) the trial court erred in not disqualifying the Pierce County Prosecutor's office because of the prosecutor's family ties to him, and (2) that the refusal of the prosecutor's office to excuse itself from the case constituted a violation of the appearance of fairness doctrine, thus necessitating reversal.

## I
### MOTION TO DISQUALIFY

■ "[A] public prosecutor is a quasi-judicial officer. He represents the state, and in the interest of justice must act impartially." *State v. Huson*, 73 Wn.2d 660, 663, 440 P.2d 192 (1968), *cert. denied*, 393 U.S. 1096, 21 L. Ed. 2d 787, 89 S. Ct. 886 (1969). If a prosecutor's interest in a criminal defendant or in the subject matter of the defendant's case materially limits his or her ability to prosecute a matter impartially, then the prosecutor is disqualified from litigating the matter, and the prosecutor's staff may be disqualified as well. *See generally State v. Stenger*, 111 Wn.2d 516, 520-23, 760 P.2d 357 (1988).

The issue here is whether the existence of an uncle-nephew relationship between the Pierce County Prosecutor and the defendant, Ladenburg, Jr., materially limited the prosecutor's ability to prosecute the matter impartially, thus requiring his disqualification of him and his office. No Washington cases have addressed the issue of whether prosecuting one's relatives is a per se conflict of interest requiring disqualification. Furthermore, the Washington Rules of Professional Conduct do not speak directly to the issue.

Ladenburg, Jr., relies primarily on the case of *State v. Stenger*, *supra*, as support for his argument that the trial court erred in not granting his motion to disqualify the prosecutor's office. In that case, our Supreme Court held that the Prosecuting Attorney of Clark County and his entire staff were disqualified from prosecuting charges against a

---

also contended that the money taken did not belong to Anderson because Anderson had cheated Ladenburg, Jr.'s friend out of it in a crap game. Apparently, Ladenburg, Jr., viewed the incident not as a robbery, but an effort to defend his honor. He claimed, also, that another person also hit Anderson.

defendant who had once been represented by the Prosecuting Attorney in another criminal matter, prior to the Prosecuting Attorney's assumption of that office. In *Stenger*, the court focused its attention on Rule of Professional Conduct 1.9(a), which specifically provides that a lawyer who has formerly represented a client in a matter shall not thereafter "[r]epresent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client . . .." *Stenger*, 111 Wn.2d at 520.

The defendant in *Stenger* was charged with aggravated first degree murder. When such a charge is leveled the prosecuting attorney has the discretion to seek the death penalty. However, before a prosecutor may ask for the death penalty, he or she must have reason to believe that there are not sufficient mitigating circumstances to merit leniency. *Stenger*, 111 Wn.2d at 521. In making its determination that the prosecutor should be disqualified, the Supreme Court stressed the fact that the prosecutor may have obtained confidential information during his former representation of Stenger which could be used to Stenger's detriment in the present case. *Stenger*, 111 Wn.2d at 521-22. Specifically, it concluded that information acquired by the prosecutor in the former case was so closely interwoven with the prosecutor's exercise of discretion in seeking the death penalty that the prosecutor should be disqualified from participating in the present prosecution against the defendant. *Stenger*, 111 Wn.2d at 522.

The court in *Stenger* went on to say that the Prosecuting Attorney might well screen himself or herself off from the prosecution of such a case, thus making it unnecessary to disqualify the entire staff of the office. *Stenger*, 111 Wn.2d at 522. It concluded, however, that no such screening had taken place and, thus, the Prosecuting Attorney and his entire staff were disqualified from participating in the case.

The situation in *Stenger* is materially different than the situation with which we are here presented. First, this is not a death penalty case and, thus, the Prosecuting Attor-

ney's office need not determine if there are mitigating circumstances which merit leniency. Second, as we have already noted above, no Rule of Professional Conduct is implicated by the Pierce County Prosecutor's office's handling of the prosecution of charges against the Prosecuting Attorney's nephew. Third, there is no suggestion that the prosecutor of Pierce County had any prior professional relationship with Ladenburg, Jr., wherein he obtained confidential information that he could use to Ladenburg, Jr.'s disadvantage. Fourth, there is no indication that Prosecuting Attorney Ladenburg actively participated in this case. Indeed, there is nothing in the record to suggest that the Prosecuting Attorney even knew that his office had charged his nephew. While one might infer that he did know, it is worth noting, as the trial court did, that the Pierce County Prosecutor's office is quite large. The office, according to the record, employs approximately 87 attorneys. Finally, there has been no showing that the defendant was actually prejudiced by the fact that his uncle is the elected Prosecuting Attorney of Pierce County. The prosecution of the charges against Ladenburg, Jr., was handled by a deputy prosecutor who had no family ties to Ladenburg, Jr., and there was no evidence that the deputy's judgment regarding the case was in any way influenced by Ladenburg, Jr.'s familial ties to the Prosecuting Attorney.

## II
### APPEARANCE OF FAIRNESS

Ladenburg, Jr., contends, additionally, that the Pierce County Prosecutor and his office violated the appearance of fairness doctrine by not excusing itself from the case. The appearance of fairness doctrine seeks to prevent "the evil of a biased or potentially interested judge or quasi-judicial decisionmaker." *State v. Post*, 118 Wn.2d 596, 619, 826 P.2d 172 (1992).

In *Post*, a defendant asserted the appearance of fairness doctrine in an effort to disqualify an allegedly biased presentence report writer from testifying at the defendant's sentencing hearing. The court held that because the writer was

not a judicial or quasi-judicial decisionmaker, the appearance of fairness doctrine did not apply. The court said:

> This distinction is an important one. Our previous decisions involving the appearance of fairness doctrine have focused on the actual and apparent bias of a judge or other quasi-judicial decisionmaker. *See, e.g., Hoquiam v. Public Empl. Relations Comm'n,* 97 Wn.2d 481, 488, 646 P.2d 129 (1982) and the cases cited therein. "The law goes farther than requiring an impartial judge; it also requires that the judge appear to be impartial." *State v. Madry,* 8 Wn. App. 61, 70, 504 P.2d 1156 (1972). The probation officer is not the decisionmaker at the sentencing hearing and is not subject to the appearance of fairness doctrine. Therefore, we hold that the appearance of fairness doctrine will not disqualify an allegedly biased writer of a presentence report. As the Court of Appeals noted, the bias affects the weight of his testimony and report.

*Post,* 118 Wn.2d at 618.

■ The reasoning of the court in *Post* applies equally well in the instant case. Judicial and quasi-judicial decisionmakers decide disputes between parties. That is not the role of the prosecutor once a prosecution is undertaken. The Prosecuting Attorney is the representative of the State in criminal matters. Because the State is not a real person, the prosecutor's office is, in reality, a party to the criminal case as well as counsel for the State. The appearance of fairness doctrine does not, in our judgment, apply to the prosecutor once the adversary proceeding has commenced. The juvenile court judge who presided at the sentencing hearing was the ultimate decisionmaker and there is not even a hint that the sentencing court was less than impartial because of the defendant's ties to the prosecutor.

To the extent that the Pierce County Prosecutor's office acted in a quasi-judicial capacity in determining what charge to file against Ladenburg, Jr., and whether or not to plea bargain with him, the appearance of fairness doctrine may apply. Even if the doctrine applies, however, it was not violated in this case.

■ Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent and disinterested observer would conclude that all parties obtained a

fair, impartial, and neutral hearing. *See generally Washington Med. Disciplinary Bd. v. Johnson*, 99 Wn.2d 466, 478, 663 P.2d 457 (1983); *State v. Eastabrook*, 58 Wn. App. 805, 816, 795 P.2d 151, *review denied*, 115 Wn.2d 1031 (1990). For the reasons stated above, we conclude that a reasonably prudent and disinterested observer would conclude that such was the case.

Although we find no merit to the issues Ladenburg, Jr., has raised on appeal, we suggest that this might have been a circumstance where, in an abundance of caution, the prosecutor and his office should have considered yielding the prosecution of the case to another prosecuting attorney's office. Although we have no way of knowing, we expect that Ladenburg, Jr.'s motion might have been met with a more favorable response by the prosecutor's office if it had been lodged earlier.[2] Ladenburg, Jr., certainly must have known from the outset that the Prosecuting Attorney was his uncle. To not raise the motion to disqualify until the morning of trial suggests to us that the disqualification effort was more tactical than substantive.

Affirmed.

PETRICH, C.J., and MORGAN, J., concur.

---

[2]Significantly, the State was represented on appeal by the office of the King County Prosecuting Attorney.