[No. 12772-9-III.   Division Three.   March 30, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. NOEL PEREZ, *Appellant*.

*Richard A. Hansen* and *Allen & Hansen,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Donna L. Wise, Deputy,* for respondent.

MUNSON, J. — Noel Perez was charged with two counts of rape in the first degree and, in the alternative, two counts of child molestation in the first degree. The victim was M., the 5-year-old daughter of his girlfriend.

After 2 days of deliberation, the jury acquitted him of the two counts of rape, hung as to one count of child molesta-

tion, and convicted him of child molestation in the first degree. While the jury was deliberating, Mr. Perez or his counsel became aware that the female deputy prosecuting attorney who tried the case was an acquaintance of the victim's second cousin. Trial counsel withdrew in order to be a witness for Mr. Perez in a posttrial motion and Appellant's present counsel was retained. The court held a posttrial hearing on the allegation of due process violation because of the violation of the appearance of fairness doctrine.[1]

The charges arose during the pendency of a paternity and custody action between Penny Pomeroy and Kevin Embree. Mr. Embree admitted paternity of M., but challenged Ms. Pomeroy's right to custody. During the pendency of the action, the relationship between Ms. Pomeroy and Mr. Embree and their respective relatives became very acrimonious. Mr. Perez, who had been residing with Ms. Pomeroy, came into the picture. There had been at one time during that action a physical encounter involving these two men and Ms. Pomeroy. Mr. Perez was funding Ms. Pomeroy's portion of the paternity action. It was during this action that M. made the allegations of sexual misconduct against Mr. Perez. Counsel for Mr. Perez felt that these were trumped up charges arising out of the paternity-custody action.

CrR 4.7(c)(3) states there is an obligation to disclose "[t]he relationship, if any, of specified persons to the prosecuting authority." At the posttrial hearing, the deputy prosecutor testified she met Shelly Upton, the victim's second cousin, at a potluck and they became friends, in part because of their mutual interest in horses and also because they were workout partners in weight lifting at the YMCA. They became friends, meeting approximately four times a week and had gone to some movies. After the charges against Mr. Perez were filed, but before trial, the deputy prosecuting attorney had attended Ms. Upton's graduation from the police acad-

---

[1]The State filed a motion in limine to prohibit questioning about the nature of the relationship between the female deputy prosecuting attorney and the victim's second cousin. No offer of proof was made concerning any extraordinary relationship between these two women.

emy.[2] At a luncheon where the presentation of the graduates was made, the deputy prosecuting attorney sat at a table with members of Ms. Upton's family. Ms. Upton's parents were divorced and her mother and father brought their respective families; M. also attended the luncheon but was at the opposite end of the table from the deputy prosecuting attorney. There is no evidence there was any discussion between the deputy prosecutor and M. at that time, although the prosecutor did admit she attended an interview with the victim witness administrator in the prosecutor's office at the time M. was interviewed and took notes; she had also taken M. to the courtroom on one occasion to point out where the jurors, witness, judge, and the parties sat and to acquaint her with the surroundings. It appears that Ms. Upton had attended some sessions of Mr. Perez' trial, in particular, during M.'s testimony. Ms. Upton did not appear as a witness.

The only evidence that the deputy prosecutor discussed the case with Ms. Upton was references to pertinent court hearings. There is no evidence they ever discussed the allegations, any evidence, or any other particulars involving Mr. Perez' trial. It also appears that the deputy prosecutor had gone to court during the paternity action and advised the court that Mr. Perez had been charged with these offenses. She may have made a suggestion that custody during the trial of M. be with Mr. Embree's mother. Ms. Pomeroy also advised the commissioner that she did not believe her daughter as to the allegations alleged here and was supportive of Mr. Perez. It also appears that at some point in time Ms. Pomeroy had called the deputy prosecuting attorney and used some objectionable language whereupon the deputy prosecutor hung up the telephone.

CrR 7.6(a) states that a court may grant a new trial if it appears a substantial right of the defendant was materially affected by prosecutorial misconduct. This state has long adhered to the "appearance of fairness" doctrine. *State*

---

[2]Ms. Upton apparently had worked for the sheriff's department for about 4 years, had been a dispatcher for the Yakima Police Department, and had been hired as a police officer and thus was required to attend the police academy.

*v. Brenner*, 53 Wn. App. 367, 768 P.2d 509, *review denied*, 112 Wn.2d 1020 (1989); *State v. Madry*, 8 Wn. App. 61, 504 P.2d 1156 (1972). This doctrine applies to prosecuting attorneys as well, at least insofar as to events leading up to the bringing of charges. *State v. Ladenburg*, 67 Wn. App. 749, 840 P.2d 228 (1992). As noted in *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807, 95 L. Ed. 2d 740, 758, 107 S. Ct. 2124 (1987):

> A prosecutor exercises considerable discretion in matters such as the determination of which persons should be targets of investigation, what methods of investigation should be used, what information will be sought as evidence, which persons should be charged with what offenses, which persons should be utilized as witnesses, whether to enter into plea bargains and the terms on which they will be established, and whether any individuals should be granted immunity. These decisions, critical to the conduct of a prosecution, are all made outside the supervision of the court.
>
> The requirement of a disinterested prosecutor is consistent with our recognition that prosecutors may not necessarily be held to as stringent a standard of disinterest as judges. "In an adversary system, [prosecutors] are necessarily permitted to be zealous in their enforcement of the law," *Marshall* v. *Jerrico, Inc.*, 446 U. S. 238, 248[, 64 L. Ed. 2d 182, 100 S. Ct. 1610] (1980). We have thus declined to find a conflict of interest in situations where the potential for conflict on the part of a judge might have been intolerable. See *id.*, at 250-252 . . ..

*See also State v. Montgomery*, 56 Wash. 443, 445, 105 P. 1035 (1909).

This doctrine also arises in matters of administrative law. In *Swift v. Island Cy.*, 87 Wn.2d 348, 361, 552 P.2d 175 (1976), the court noted:

> It is the possible range of mental impressions made upon the public's mind, rather than the intent of the acting governmental employee, that matters. The question to be asked is this: Would a disinterested person, having been apprised of the totality of a board member's personal interest in a matter being acted upon, be reasonably justified in thinking that partiality may exist? If answered in the affirmative, such deliberations, and any course of conduct reached thereon, should be voided.

*See also Lake Forest Park v. Shorelines Hearings Bd.*, 76

Wn. App. 212, 217, 884 P.2d 614 (1994). In *Swift*, the court found there was substantial evidence to raise the question of the appearance of fairness and that the county commissioner involved, although without any evidence of an improper intent, violated the appearance of fairness doctrine.

Here, there is no showing, other than that these two women were friends and that they met on a regular basis, that there was any influence brought by the victim's second cousin or her family on the prosecutor in bringing these charges. It is true that after trial the two women took a vacation to Hawaii with two other people and among gifts Ms. Upton brought home was a T-shirt for M.; that is neither unusual nor improper conduct. It is not unusual for prosecuting attorneys and law enforcement officers to be friends, be they male or female. The contention made here is built solely on speculation and conjecture. There is no evidence to support any improper conduct. There was no error.

Second, Mr. Perez contends that the only Hispanic juror on his jury was unable to get to court because of transportation problems the day the case was to be submitted to the jury. The judge, exercising his discretion, seated an alternate juror. While we may have made a different decision, that decision was within the discretion of the trial court and that discretion was not abused.

Third, Mr. Perez contends the court should have given a unanimity instruction. The court did instruct that the charges of rape carried with it an alternate charge of molestation. Given the verdict, we perceive there was no error.

Judgment affirmed.

THOMPSON, C.J., concurs.

SWEENEY, J. (dissenting) — The majority opinion fairly and accurately sets out the facts material to the disposition of this case. I disagree with its application of the law and therefore respectfully dissent.

The appearance of fairness doctrine provides that a "judicial proceeding is valid only if a reasonably prudent and disinterested observer would conclude that all parties obtained a fair, impartial, and neutral hearing." *State v. Ladenburg*, 67 Wn. App. 749, 754-55, 840 P.2d 228 (1992); *State v. Brenner*, 53 Wn. App. 367, 374, 768 P.2d 509, *review denied*, 112 Wn.2d 1020 (1989). The doctrine seeks to prevent " 'the evil of a biased or potentially interested judge or quasi-judicial decisionmaker.' " *Ladenburg*, at 753 (quoting *State v. Post*, 118 Wn.2d 596, 619, 826 P.2d 172 (1992)).

A prosecutor is a quasi-judicial officer. *Ladenburg*, at 751. To the extent that a prosecutor acts in a quasi-judicial capacity in determining the charges to file against a defendant, the appearance of fairness doctrine may apply. *Ladenburg*, at 754. Once, however, prosecution is undertaken and the adversary proceeding commences, the appearance of fairness doctrine does not apply to the prosecutor. *Ladenburg*, at 754 (once prosecution is undertaken prosecutor's office is a party to the criminal case, not a decisionmaker).

Here, Shelly Upton and the deputy prosecutor became friends in January 1991. They worked out together at a local gym approximately 4 days a week and had some social contacts. The deputy prosecutor was assigned to Noel Perez's case in April 1991. At the time she made the decision to file rape and child molestation charges against him, she was aware of the hostile custody dispute, and the hostility between Mr. Perez and the Embree family. She knew Ms. Upton was M.'s blood relative and that Ms. Upton had strong family ties to M., Mr. Embree, and M.'s grandmother, Mary Embree.

Given the facts of this case, I believe that a "reasonably prudent and disinterested observer" could well find the deputy prosecutor's decision to file the rape and molestation charges against Mr. Perez was based not solely on the evidence, but at least in part on her friendship with M.'s family member. The appearance of fairness doctrine was therefore violated.

Although not material for purposes of determining whether the appearance of fairness doctrine was violated, *Ladenburg*, at 754, my position is supported by events which occurred after Mr. Perez's prosecution was undertaken. Soon after the charges were filed, the deputy prosecutor recommended that M.'s grandmother be appointed M.'s caregiver during the course of the trial. Prior to and during the course of the trial, the deputy prosecutor discussed the court proceedings with Ms. Upton. Once the trial began, Ms. Upton attended regularly and was present when M. testified. The record further indicates that there were social occasions when the prosecutor saw the victim and her family.

I think the interest in protecting the appearance of fairness and impartiality in the judicial process requires that Mr. Perez be granted a new trial.

Reconsideration denied April 20, 1995.

Review denied at 127 Wn.2d 1014 (1995).