[No. 60801-1-I.    Division One.    March 2, 2009.]

*In the Matter of the Guardianship of* LOUISE LAVERNE WELLS.

CARE PLANNING ASSOCIATES, *as Guardian, Respondent*, v. DIRK MAYBERRY ET AL., *Appellants*.

*Jason E. Anderson*, for appellants.
*Henry H. Judson III*, for respondent.

¶1 PER CURIAM — In guardianship proceedings, the superior court has broad and exclusive jurisdiction over the administration of the estate of an incapacitated individual. In hearing such matters, the court also has the authority to impose sanctions for civil contempt to coerce a party's compliance with a judgment or order. We have reviewed the record and affirm the trial court in all respects and award attorney fees on appeal.

## FACTS

¶2 Louise Laverne Wells, her adult children, and others claimed various ownership interests in the family home in Seattle. Title to the home was the subject of dispute and then litigation when Wells and one of her daughters filed an action to quiet title against the claimed interests of Dirk Mayberry, his spouse, and one of his corporate entities, Response Capital Mortgage, Inc. (collectively referred to as Mayberry). Mayberry claimed a 50 percent interest in the home. During the litigation, Wells was determined to be incapacitated and guardians of her estate and person were appointed.[1] Wells moved out of the family home to live with the guardians of her person. Following the establishment of the guardianship, the guardian of the estate, its counsel, and counsel for Wells engaged in settlement negotiations with Mayberry. A settlement was reached and an agree-

---

[1] Care Planning Associates was appointed guardian of the estate of Louise L. Wells; Horace and Gloria Wells were appointed as guardian of the person of Louise L. Wells.

ment drafted. Its execution was contingent on approval by the court, and the agreement was not considered fully executed until such approval was obtained. The agreement provided that upon execution, the quiet title action "shall be dismissed with prejudice in accordance with Civil Rule 41." The court approved the agreement, authorizing the guardian to take all actions necessary to carry out its provisions. The agreement allowed Wells' adult children who lived in the home to reside there as tenants for an additional 90 days, so long as they paid rent and all utilities. Response Capital Mortgage, Inc., and Start Corporation of America (Start Corp.) were not to be responsible for repairs or maintenance of the home.

¶3 The agreement also set forth that Wells would receive funds within 60 days of its approval and a remaining balance to be paid into a Medicaid pooled trust for her benefit.[2] Mayberry, Start Corp., and Elizabeth Wilson[3] executed a promissory note and deed of trust securing the note in favor of Wells and her attorney in the amount of $54,831.27, due and payable April 29, 2007. In addition to its provision for interest, the promissory note also included a section providing for attorney fees and costs.[4] In return, all claims to the property were deeded to Response Capital and Start Corp.

¶4 Wells did not receive funds by the due date. Pursuant to the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, the guardian petitioned for and ob-

---

[2] Additional amounts were due to the Wells children, payable initially and at later dates. Funds paid later were to be used to fund a family trust.

[3] Elizabeth T. Wilson was a successor in the interest of Carolyn Wells, the daughter of Louise Wells. Eventually Wilson's interest was transferred to Start Corp.

[4] Paragraph 10 of the promissory note provided:

Maker shall pay all costs incurred by Holder in collecting sums due under this Note after a default, including reasonable attorneys' fees, whether or not suit is brought. If Maker or Holder sues to enforce this Note or obtain a declaration of its rights hereunder, the prevailing party in any such proceeding shall be entitled to recover its reasonable attorneys' fees and costs incurred in the proceeding (including those incurred in any bankruptcy proceeding or appeal) from the non-prevailing party.

tained a citation directing Response Capital and Dirk and Jane Doe Mayberry to appear before the court to show cause why their obligations under the agreement had not been met.[5]

¶5 The scheduled hearing was continued a number of times at the request of counsel for Mayberry, with the eventual hearing set for October 5, 2007.[6] The day before this hearing, Mayberry appeared unannounced at the office of counsel for the guardian requesting another continuance. He claimed the adult children of Wells caused considerable damage to the family home after the agreement was approved. The guardian did not agree to a continuance.

¶6 At the October 5 hearing, Mayberry did not dispute his breach of the agreements or provide a written response to the petition but raised the claim of alleged damage to the home by Wells' adult children. Mayberry testified under oath that the sale of the house that was to provide the funds for distribution to Wells had occurred. He produced *copies* of two cashier's checks made out to Wells but admitted he did not have the original checks. After review of these copies, the commissioner set the hearing over until 3:00 p.m. and instructed Mayberry to prepare a written response to the petition, set forth any claims about the damage to the house, and bring the originals of the cashier's checks to the court. The court specifically stated to counsel:

> Your client is not going to scam this Court with "I don't have possession of the checks." . . . He's invited to bring the checks to

---

[5] Specifically, the citation directed Response Capital and Mr. and Mrs. Mayberry to appear and show cause why they should not be found to have breached a portion of the settlement agreement, why judgment should not be entered against them for the breach, why the guardian should not be authorized to file a lis pendens on any real property owned by any of them, why the guardian should not be authorized to foreclose on the real property that was the subject of the settlement agreement, why the guardian should not be authorized to intervene on behalf of Wells in any bankruptcy action commenced by either of them, and why they should not be directed to pay fees and costs.

[6] After negotiation, Mayberry entered into an agreement providing that the funds owed to Wells, including additional fees and costs to the attorney and guardian, would be paid through an escrow account following the sale of a home owned by Mayberry or one of his corporate entities. Thereafter, counsel for the guardian agreed to continue the hearing until October 5, 2007.

Court as I've advised him, and I told him we would discuss what's going to happen. I'll hear from you by a written presentation from him as to what his issues are, but if I don't see those checks at 3:00, counsel, I will be issuing a citation for his arrest and incarceration until the checks are produced. Very clear. All right?

¶7 At the 3:00 p.m. hearing, counsel for Mayberry appeared but Mayberry did not. Mayberry failed to provide a written response or produce the original cashier's checks as ordered by the court. Counsel for the guardian requested judgment against Mayberry, authority to foreclose on the home property, and authority to intervene in any bankruptcy action if necessary. Counsel for the guardian asked the court to amend the judgment to include Start Corp., the entity that owned the house sold to provide the funds due as well as being a party to the settlement agreement.

¶8 The commissioner granted the relief sought in the petition for citation. Then, acting on its own motion, the court imposed sanctions on Mayberry and Start Corp., totaling $100 a day, to begin immediately, until the judgments were satisfied. The court entered judgment of $9,000 to secure payment of the sanction. At the end of 90 days, if the judgment was not yet satisfied, the guardian could seek renewal of the sanction and extend it. The sanction was to be lifted once the judgment was paid.[7]

¶9 The commissioner found that Mayberry and his corporate entities were attempting to avoid paying the money due under the agreement. After Mayberry's earlier testimony, the commissioner gave little credence to Mayberry's damage claim but told him to make his argument at the afternoon hearing, which he did not do.[8]

---

[7] Start Corp. signed the settlement agreement. However, it was never served with process on the petition for citation. The guardian argued that Start Corp. was part of Mayberry's enterprises and sought to have Start Corp. added to the judgment. The commissioner agreed and included Start Corp. in the judgment.

[8] While the commissioner believed that damage may have occurred, the court noted that the property was titled in the name of Mayberry and his corporate

¶10 The commissioner fully explained to counsel for Mayberry that if the original cashier's checks were proffered to the court, it would rescind the order and quash the bench warrant. The commissioner reiterated that the court was required to act as a "super guardian" to protect the disabled citizens of the state who are subject to the jurisdiction of the court. The commissioner encouraged counsel for the guardian to consider a number of additional options to persuade Mayberry to pay off the judgment.[9]

¶11 On October 18, 2007, counsel for the guardian and Mayberry appeared to present the judgment underlying the sanctions imposed and additional relief suggested by the court. The commissioner inquired how counsel for the guardian was planning to proceed, as the commissioner was concerned about the cost to the parties, including Mayberry. Counsel for Mayberry stated, "I can't say I'm absolutely sure, but I'm somewhat sure that my client is willing to pay like $35,000 now towards this judgment, which would then leave 20-some-odd thousand or so ow[ ]ing." Counsel also said he could understand that the guardian might have some difficulty with that, given the history of the case. The commissioner told counsel that when Mayberry deposited that amount of money with the court and provided title reports on other properties over which he clearly had ownership or control, and for which he could sign a note and deed of trust, then the court might be willing to proceed with the plan. The court indicated that the transaction would have to be handled by a title company so there would be no question of any interim transfers of the property used. And Mayberry would have to pay for all the expenses due to

entities for a long time, and if Mayberry and the entities did not bother to evict the tenants who damaged property, the problem was not likely one for Wells.

[9] These suggestions included the possible foreclosure of the deed of trust, calling the elder fraud division of the Seattle and Tacoma police departments and/or the King County prosecutor, checking SCOMIS (Superior Court Management Information System) for other litigation to alert counsel, preparing a letter of complaint to the Office of the Attorney General to encourage it to enter a cease and desist order for any of Mayberry's corporations, and further, checking to see if Mayberry was a principal with the escrow company that failed to properly pay off the judgment, as well as looking for any interrelationship between other businesses involved.

the delay. Additionally, the commissioner indicated he would be willing to reduce the sanctions and simply charge Mayberry for attorney fees that he caused counsel for the guardian to incur, so long as at least $35,000 was paid from a local bank, not a foreign bank, and other security for the guardianship was in place.[10]

¶12 The commissioner signed the order imposing further relief and judgment against Mayberry and Start Corp. The court also issued an order authorizing the issuance of a warrant for the arrest of Dirk Mayberry, which included the steps he needed to take to gain release following arrest.

¶13 Mayberry and Start Corp. moved to revise the October 18 order and judgment. Before action was taken on these motions, Mayberry filed a notice of appeal. Thereafter, this court granted permission for the superior court to hear the motion to revise. On December 13, 2007, the superior court granted Start Corp.'s motion to revise and ordered that only the judgment entered against Start Corp. was vacated. The appeal follows.[11]

## DECISION

¶14 Mayberry first argues the court lacked subject matter jurisdiction to enforce the settlement agreement and to determine liability. The question of subject matter jurisdiction is a question of law that we review de novo.[12] "Subject matter jurisdiction" is "the authority of the court to hear and determine the class of actions to which the case belongs."[13] Because superior courts are courts of general

---

[10] The record does not disclose that any of these suggestions actually occurred.

[11] Appellants' argument about the judgment against, or the sanctions imposed on, appellant Start Corp. is moot. The judgment against Start Corp. was vacated by order of the superior court over six months before the filing of the appellants' brief.

[12] *Somers v. Snohomish County*, 105 Wn. App. 937, 941, 21 P.3d 1165 (2001); *In re Marriage of Thurston*, 92 Wn. App. 494, 497, 963 P.2d 947 (1998), *review denied*, 137 Wn.2d 1023 (1999).

[13] *In re Adoption of Buehl*, 87 Wn.2d 649, 655, 555 P.2d 1334 (1976).

jurisdiction, they lack subject matter jurisdiction only in compelling circumstances.

¶15 Mayberry claims the court sitting in guardianship proceedings did not have jurisdiction because the underlying action was one of quiet title. Mayberry is incorrect. The court was not being asked to determine title but was presented with a controversy relating to property of the estate being held by the appellants.

■ ¶16 TEDRA mandates using nonjudicial resolution in trust and estate cases but permits judicial resolution if other methods are unsuccessful.[14] Under TEDRA, "[t]he superior court of every county has original subject matter jurisdiction over the probate of wills and the administration of estates of incapacitated, missing, and deceased individuals in all instances."[15] The guardian filed a petition invoking TEDRA, which gives superior courts broad and exclusive jurisdiction over the estates of incapacitated individuals. Here Mayberry and Response Capital were served with process and were parties to the settlement agreement with others, including the guardian of the estate of Wells, and thus the court had subject matter jurisdiction.

■ ¶17 In any event, Mayberry and Response Capital failed to preserve this defense as they did not initially assert the claim in a responsive pleading or by timely motion. CR 12(b), (h)(1)(B).

¶18 Next, Mayberry argues the commissioner improperly entered an order imposing sanctions against him and his corporate entities because there was no requisite finding by the court that he had the current means to satisfy the judgment to permit the court to impose sanctions for civil contempt.[16]

---

[14] RCW 11.96A.010.

[15] RCW 11.96A.040(1).

[16] We recognize that the case of *Britannia Holdings Ltd. v. Greer* sets forth that the "exercise of the contempt power is appropriate only when 'the court finds that the person has failed or refused to perform an act that is yet within the person's power to perform.'" 127 Wn. App. 926, 933-34, 113 P.3d 1041 (2005) (emphasis

■■ ¶19 RCW 7.21.020 provides the authority to impose sanctions for contempt.[17] Sanctions for civil contempt are remedial, i.e., intended to coerce a party's compliance with a judgment or order while at the same time permitting the contemnor to avoid the sanction by doing something to purge the contempt.[18] Where a remedial sanction has been imposed, the contemnor effectively " 'carries the keys of his prison in his own pocket.' "[19]

■■ ¶20 Here, Mayberry does not dispute that he failed to comply with the court's judgment. He claims for the first time on appeal that the court failed to enter the requisite finding that he had the current ability to comply with the order of civil contempt. While the court did not enter specific numbered findings regarding Mayberry's ability to currently comply with the sanction, review of the transcript of the hearing and the order imposing contempt reveals that Mayberry, under oath, represented to the court that he had the ability to pay and never argued that he did not. The court specifically acknowledged Mayberry's testimony that he obtained cashier's checks to satisfy the amounts due. Mayberry was directed to bring those checks to the court. The court imposed sanctions only after Mayberry failed to appear, respond to the petition, or produce the original cashier's checks. In summary, the evidence was undisputed that Mayberry had the current ability to comply with the terms of the order and judgment. Under the circumstances, the court's order recognizing Mayberry's ability to pay was

---

omitted) (quoting RCW 7.21.030(2)), *review denied*, 156 Wn.2d 1032 (2006). The court stated that there is a threshold requirement of a finding of current ability to perform the act previously ordered.

[17] "A judge or commissioner of the supreme court, the court of appeals, or the superior court, a judge of a court of limited jurisdiction, and a commissioner of a court of limited jurisdiction may impose a sanction for contempt of court under this chapter." RCW 7.21.020.

[18] RCW 7.21.030.

[19] *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994) (internal quotation marks omitted) (quoting *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 442, 31 S. Ct. 492, 55 L. Ed. 797 (1911)).

a sufficient determination to support the court's order of contempt.

¶21 This case is distinguishable from those cases where there was no evidence of a current ability to pay the order or judgment. Mayberry had the burden to show he was unable to comply with the trial court's order.[20] Given his testimony, he could not meet this burden.

¶22 Whether contempt is warranted is a matter within the court's discretion.[21] The court's order will not be disturbed unless the court abused its discretion.[22] Discretion is abused if its exercise was manifestly unreasonable or was based on untenable grounds.[23] The court did not abuse its discretion.

¶23 Mayberry next contends the commissioner displayed bias toward him and violated the appearance of fairness doctrine. He claims that the commissioner made a number of statements throughout the course of the proceedings showing animosity toward him and that those statements alone indicate a lack of fairness. In addition to the statements, Mayberry contends the commissioner's imposition of sanctions and the order for a bench warrant also showed the court's bias and unfairness. Given the nature of the statements and orders, Mayberry asserts that the orders should be reversed and any further proceedings should occur in front of a different judge or commissioner. We disagree.

¶24 " 'Under the appearance of fairness doctrine, a judicial proceeding is valid only if a reasonably prudent and disinterested observer would conclude that all parties obtained a fair, impartial, and neutral hearing.' "[24]

---

[20] *See Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995) (The law presumes that one is capable of performing the actions required by the court, and the inability to comply with a court's order is an affirmative defense.).

[21] *Id.*

[22] *In re Pers. Restraint of King*, 110 Wn.2d 793, 798, 756 P.2d 1303 (1988).

[23] *Moreman*, 126 Wn.2d at 40.

[24] *State v. Bilal*, 77 Wn. App. 720, 722, 893 P.2d 674 (quoting *State v. Ladenburg*, 67 Wn. App. 749, 754-55, 840 P.2d 228 (1992), *abrogated on other grounds by State*

Evidence of a judge or commissioner's actual or potential bias is required before the appearance of fairness doctrine will be applied.[25] A party claiming bias or prejudice must support the claim.[26]

¶25 The record reveals that the guardian sought to bring Mayberry and others before the guardianship court in order to obtain direction and authority to procure payment of the funds owed under the settlement agreement. Mayberry filed no written response but appeared at the initial hearing. During the hearing, while under oath, he admitted breaching the settlement agreement, the subsequent agreement with the guardian for payment of the amounts owed in exchange for a continuance, and further admitted he had the cashier's checks to satisfy the outstanding obligation to Wells. When Mayberry raised an issue regarding alleged damage to the house, the commissioner afforded him the opportunity to do so. Mayberry willfully disobeyed by failing to appear, file a written response, make the additional claims, or produce the cashier's checks. Our review of the record reveals that the comments and actions of the commissioner show understandable frustration with Mayberry and his corporate entities but do not rise to a level of bias or violation of an appearance of fairness.

¶26 The guardian seeks attorney fees and costs on appeal. Reasonable attorney fees are recoverable on appeal if allowed by statute, rule, or contract, and the request is made pursuant to RAP 18.1(a).[27] The claim for fees is based on the attorney fees and costs paragraph of the promissory note executed by the appellants. Fees and costs on appeal are hereby granted in an amount to be set by a commissioner of this court upon compliance with RAP 18.1.

---

v. Finch, 137 Wn.2d 792, 975 P.2d 967 (1999)), review denied, 127 Wn.2d 1013 (1995).

[25] State v. Post, 118 Wn.2d 596, 618-19 & n.9, 826 P.2d 172, 837 P.2d 599 (1992).

[26] Bilal, 77 Wn. App. at 722.

[27] Malted Mousse, Inc. v. Steinmetz, 150 Wn.2d 518, 535, 79 P.3d 1154 (2003).

¶27 Citing RAP 18.9(c), the guardian seeks dismissal of the appeal, arguing the appeal is frivolous. An appeal is deemed frivolous if, considering the entire record, no debatable issues are presented upon which reasonable minds might differ and it is so devoid of merit that there is no reasonable possibility of reversal.[28] While there is little merit to Mayberry's claims on appeal, we do not find it to be entirely frivolous.

¶28 Affirmed.

---

[28] *Goad v. Hambridge*, 85 Wn. App. 98, 105, 931 P.2d 200, *review denied*, 132 Wn.2d 1010 (1997).