2015 NOV 23  AM 8: 3


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Parenting and Support of | ) ) ) | No. 72742-7-I |
| Z.L.P., | ) ) | |
| Child. | ) ) | |
| MICHAEL CHRISTOPHER PERKINS, | ) ) | |
| Appellant, | ) ) | |
| and | ) | UNPUBLISHED OPINION |
| JENNIER LYNN HOPPER, | ) ) | FILED: November 23, 2015 |
| Respondent. | ) ) ) | |

VERELLEN, A.C.J. — Without evidence of actual or potential bias, an appearance of fairness claim fails. Here, Michael Perkins argues the judge violated the appearance of fairness doctrine because during a hearing to amend a temporary parenting plan, the judge allegedly stated, "There is . . . no situation where I would change the custody of the child to you."[1] But Perkins did not provide us with a record of the alleged statement. Even if we were to ignore the inadequate record, it appears the statement was made in the context of a hearing to amend a temporary parenting plan, yet Perkins is appealing the judgment establishing the final parenting plan. In that setting, the alleged statement does not reveal actual or potential bias. Accordingly, we affirm.

---

[1] Clerk's Papers (CP) at 327.

## FACTS

On September 10, 2012, Island County Superior Court Judge Vickie Churchill entered a temporary order for a parenting plan for Michael Perkins and Jennifer Hopper's six-month-old daughter. On August 1, 2013, Hopper filed a motion to amend the temporary plan. After a hearing on the motion, Judge Churchill entered a temporary parenting plan designating Hopper as the primary residential parent. The temporary plan also included a provision that, for purposes of laws that require a designation of custody, Hopper should be considered the "custodian" of the child.[2]

On August 22, 2013, Perkins filed a motion for reconsideration. In his motion, he alleged that the "judge prejudicially stated on the record, 'There is . . . no situation where I would change the custody of the child to you.'"[3] It is unclear from the record before us whether Perkins ever noted his motion to reconsider for consideration by a judge. We have not been provided with any ruling on the motion.

In August 2014, Judge Churchill presided over a three-day trial to establish a final parenting plan and child support. At the end of the first day of trial, Perkins argued that Judge Churchill was biased against him because of some past contact she had had with his mother. Judge Churchill responded, "We're going to stop here, and we're going to start at another time because, Mr. Perkins, I have no idea what you're talking about."[4] When trial resumed, Judge Churchill stated,

> Mr. Perkins had attempted to get some information in about some sort of contact, I guess you would say, that I may or may not have had with Mrs. Perkins, Christine Perkins. The fact is, I'm sorry to say this, it's

---

[2] CP at 362.

[3] CP at 327.

[4] Report of Proceedings (RP) (Aug. 15, 2014) at 179.

2

an issue with me a lot because I have a lot of people that are in and out of my life, but, Mrs. Perkins, we may have had some contact in the past, but, frankly, it was so insignificant to me that I don't recall it. And so that means that whatever may be something that you remember, is just simply nothing that I do.

I do not want to hear about it because I don't want my memory refreshed on anything like that. For me, you were just somebody that's coming in and testifying.[5]

After the trial concluded, Judge Churchill entered a judgment establishing the final parenting plan and designating Hopper as the primary residential parent. The final parenting plan increased Perkins's residential placement with his daughter above his temporary residential placement. Hopper again was designated as custodian of the child solely for purposes of all state and federal statutes requiring such a designation.

On October 19, 2014, Perkins filed a motion for reconsideration of the final parenting plan. In this motion, he asked the superior court to "[r]econsider that Judge Churchill is biased given the familiarity with my family and the falling out that she had with my mother."[6] Again, it is unclear from the record whether Perkins's motion was ever noted for consideration by the superior court. The record does not contain any ruling on the motion to reconsider.

Perkins appeals the judgment establishing the final parenting plan.

ANALYSIS

Perkins argues Judge Churchill violated the appearance of fairness doctrine because, in making her ruling on the amended temporary parenting plan, she allegedly stated, "There is . . . no situation where I would change the custody of the child to you."[7]

---

[5] RP (Aug. 21, 2014) at 184.

[6] CP at 21.

[7] CP at 327.

3

"Washington's appearance of fairness doctrine seeks to prevent the problem of a biased or potentially interested judge."[8] A judicial proceeding satisfies the appearance of fairness doctrine "'only if a reasonably prudent and disinterested observer would conclude that all parties obtained a fair, impartial, and neutral hearing.'"[9] "The test for determining whether the judge's impartiality might reasonably be questioned is an objective test that assumes that 'a reasonable person knows and understands all the relevant facts.'"[10] Because the superior court is presumed to perform its functions regularly and properly without bias or prejudice, "[w]ithout evidence of actual or potential bias, an appearance of fairness claim cannot succeed and is without merit."[11]

Perkins's entire argument on appeal is based upon Judge Churchill's alleged statement that she would not change custody of his and Hopper's daughter to him. He claims this statement "foretold the outcome of the custody issue long before the trial even began" because [w]hile the parenting plan issued after the trial concluded awarded [him] more time with his daughter than had been previously ordered, the question of who would be the child's primary caregiver had been already decided by the judge at the August 12, 2013 hearing on temporary orders."[12] But Perkins failed to provide this court with the full verbatim report of proceedings from the August 12, 2013 hearing.[13]

---

[8] Tatham v. Rogers, 170 Wn. App. 76, 95, 283 P.3d 583 (2012).

[9] State v. Bilal, 77 Wn. App. 720, 722, 893 P.2d 674 (1995) (quoting State v. Ladenburg, 67 Wn. App. 749, 754-55, 840 P.2d 228 (1992)).

[10] Sherman v. State, 128 Wn.2d 164, 206, 905 P.2d 355 (1995) (quoting In re Drexel Burnham Lambert, Inc., 861 F.2d 1307, 1313 (2d Cir. 1988)).

[11] State v. Post, 118 Wn.2d 596, 619, 826 P.2d 172, 837 P.2d 599 (1992).

[12] Reply Br. at 10.

[13] See CP at 295-324.

The record before us does not include the alleged statement made by Judge Churchill during that hearing.

"The party seeking review has the burden of perfecting the record so that this court has before it all of the evidence relevant to the issue."[14] In the absence of an adequate record, we cannot review the merit of Perkins's argument.

Even if we ignore the inadequate record and assume the alleged statement was made at the temporary hearing,[15] context is everything. Here, Perkins is appealing the final judgment establishing the parenting plan. A party asserting a violation of the appearance of fairness doctrine "must produce sufficient evidence demonstrating bias, such as personal or pecuniary interest on the part of the decision maker; mere speculation is not enough."[16]

The limited record here reveals that Perkins's and Hopper's daughter was having a difficult time adjusting to the existing temporary residential schedule given her young age.[17] In the context of a motion seeking to amend the temporary plan to better address the daughter's adjustment, it is not troublesome if the judge announces that a major change of "custody" or residential placement was not an option for that hearing. And there is the possibility that such a reference to "custody" was related to the provision of the temporary plan designating a "custodian" for purposes of state and

---

[14] Olmsted v. Mulder, 72 Wn. App. 169, 183, 863 P.2d 1355 (1993); RAP 9.2(b).

[15] See CP at 295-324, 358-65.

[16] In re Pers. Restraint of Haynes, 100 Wn. App. 366, 377 n.23, 996 P.2d 637 (2000).

[17] See CP at 304-06.

federal laws requiring such a designation.[18] Without a more complete record, we cannot analyze the context and meaning of the alleged statement.

At trial, Perkins offered vague allegations about a prior interaction between the judge and his mother. The judge expressly told Perkins that she did not remember having any contact with his mother.[19] On appeal, Perkins offers no evidence of actual or potential bias related to the trial judge's alleged statement at the temporary hearing or interactions between the judge and his mother. Accordingly, Perkins's appearance of fairness claim fails.

Perkins also argues Judge Churchill violated the due process clause by not recusing herself from the matter. We disagree.

"'The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases.'"[20]

> "Despite the breadth with which the United States Supreme Court has expressed the right to a 'fair trial in a fair tribunal,' 'most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard.'"[21]

---

[18] Included in the mandatory domestic relations form for parenting plans is a "Designation of Custodian," which provides, "The children named in this parenting plan are scheduled to reside the majority of the time with (name) _____. This parent is designated the custodian of the child(ren) solely for purposes of all other state and federal statutes which require a designation or determination of custody. This designation shall not affect either parent's rights and responsibilities under this parenting plan." 22A Scott Horenstein, WASHINGTON PRACTICE . FAMILY AND COMMUNITY PROPERTY LAW HANDBOOK, WPF PS 01.0400 at 497-98 (2015 ed.).

[19] See RP (Aug. 15, 2014) at 179; RP (Aug. 21, 2014) at 184.

[20] Tatham, 170 Wn. App. at 90 (quoting Marshall v. Jerrico, Inc., 446 U.S. 238, 242, 100 S. Ct. 1610, 64 L.Ed.2d 182 (1980)).

[21] Id. (quoting Withrow v. Larkin, 421 U.S. 35, 46, 95 S. Ct. 1456, 43 L. Ed. 2d 712 (1975); Bracy v. Gramley, 520 U.S. 899, 904, 117 S. Ct. 1793, 138 L. Ed. 2d 97 (1997)).

Here, the appearance of fairness doctrine provides Perkins greater procedural protection than the minimum requirements of the due process clause.[22] Because Perkins's appearance of fairness claim fails, he necessarily fails to establish any due process violation.

We affirm.

WE CONCUR:

_Trickey, J_

---

[22] <u>Matter of Johnston</u>, 99 Wn.2d 466, 478, 663 P.2d 457 (1983).