# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In re the Marriage of:

AMIN S. LAKHA,

              Appellant,

      v.

AFSHAN A. LAKHA,

              Respondent.

No. 83270-1-I

DIVISION ONE

UNPUBLISHED OPINION

DÍAZ, J. — Amin Lakha[1] appeals the superior court's order granting Afshan Lakha's motion to enforce an "equalizing payment provision" in their CR 2A Agreement[2] and Separation Contract (the "Agreement"). Amin argues that the equalizing payment provision was subject to the Agreement's alternative dispute resolution ("ADR") provisions and that the court erred by ruling that that ADR process did not apply to the equalizing payment provision. Amin also challenges the court's award of attorney fees to Afshan. We reverse and remand this matter to the superior court to order the parties to comply with the Agreement's ADR provisions, and we direct the court to determine and award

---

[1] For the sake of simplicity, we respectfully refer to the parties by their first names.

[2] CR 2A governs stipulations made between parties:

No agreement or consent between parties or attorneys in respect to the proceedings in a cause, the purport of which is disputed, will be regarded by the court unless the same shall have been made and assented to in open court on the record, or entered in the minutes, or unless the evidence thereof shall be in writing and subscribed by the attorneys denying the same.

Citations and pin cites are based on the Westlaw online version of the cited material.

Amin's reasonable attorney fees in defending against the motion to enforce and to bring this appeal.

I.     FACTS

Afshan and Amin were married in 1991 and separated in May 2017.   Amin petitioned for divorce in December 2018.

At the time of their separation, the couple's marital estate was worth approximately $194 million dollars and included ownership of several business entities and commercial properties.   In August 2019, Afshan and Amin entered into the Agreement, largely allocating certain property and making financial management arrangements prior to their divorce.   The parties also agreed Amin would make an "equalizing payment" to Afshan in the amount of $2,701,885, plus repayment of a loan from Afshan to Amin of up to $3 million and interest on that loan, in order to achieve an equal division of the estate.

Specifically, the Agreement allocated to Amin "Avenue Bellevue," a development project and, as part of financial management of that project, entitled him to borrow up to $3 million in cash from Afshan at six percent interest while he sought other financing.   The Agreement gave Afshan the option either to invest the loan obligation into the Avenue Bellevue project in return for ownership shares or making the loan amount part of her equalizing payment (along with interest and any other debts incurred).   Regardless, the Agreement indicated that, if Afshan declined to invest some or all of her equalizing payment,

> [Amin] shall pay her the equalizing payment with 7.5% interest from the date she notifies him of her decision, due in full on or before 12 months of the entry of the parties' divorce decree. . . .   If the equalizing payment is not timely paid, it will accrue interest from the due date at 12% per annum until paid in full.

There is no further statement as to how long the interest could accrue.

In the Agreement's general provisions in Section 4.1, the parties agreed that the document was a

> complete agreement between the parties and is enforceable in court.  Each party understands that even though a decree yet needs to be prepared, this stipulation and Agreement is binding upon them and enforceable in court.
>
> . . .
>
> Any party failing to carry out the terms of this Agreement shall be responsible for any court costs and reasonable attorney's fees of the other party incurred as a result of such failure.

In Section 4.4 of the Agreement, the parties also agreed to engage in informal negotiation and ADR where necessary:

> [I]f any other issue arises in connection with . . . the interpretation or implementation of this Agreement . . . or if the parties later realize that essential terms have been omitted, they shall endeavor to work such matters out through informal negotiation.  If those efforts are not successful, either party may submit the matter to a single neutral panelist from JAMS[3] or JDR[4] for mediation and, if mediation is unsuccessful, for binding arbitration pursuant to RCW 7.04.[5]

A substantially prevailing party would be entitled to attorney fees "in the arbitration and in any subsequent court action to enforce an arbitral award."

Afshan and Amin's divorce became final on March 23, 2020.  Their dissolution decree incorporated by reference the August 2019 Agreement, and required the parties to comply with its terms.  The decree specifically noted that the parties were required to pay debts as directed by the Agreement, and again restated the Agreement's requirement

---

[3] Judicial Arbitration and Mediations Service.
[4] Judicial Dispute Resolution.
[5] RCW 7.04 refers to Washington's Uniform Arbitration Act.

for the parties to resolve any "issues with interpretation or implementation of their [A]greement or any omitted issues" through "informal negotiation, mediation, or if those are unsuccessful, then by binding arbitration."

In July 2020, Afshan notified Amin that she declined to invest her equalizing payment in Avenue Bellevue. According to the terms of the Agreement, as Afshan did not invest her equalizing payment in the project, Amin was required to disburse the equalizing payment to Afshan on March 23, 2021, which was one year after their divorce became final, or begin to incur interest of 12 percent on the entire amount. Amin failed to make this payment.

In September 2021,[6] Afshan filed a motion to enforce the CR 2A Agreement to compel Amin to pay her the equalizing payment in addition to the accrued interest, damages, and attorney fees and costs. She argued that Amin's default was not subject to the Agreement's dispute resolution provision because the equalizing payment did not fall under the scope of "interpretation," "implementation," or an "essential term" that had been omitted. Rather, Afshan argued that the terms of the Agreement were clear that Amin "shall pay" the equalizing payment "before 12 months of the entry of the parties' divorce decree." As such, the issue was about "enforcement" and outside of the scope of the parties' dispute resolution provision and immediately enforceable in court.[7]

---

[6] Afshan's September 2021 motion to enforce was the amended version of an earlier motion.

[7] Afshan made a secondary argument below that Amin "implicitly waived his right to invoke the ADR [p]rovisions" because he had earlier indicated his intent to sue her for breach of contract if she continued to litigate her motion to enforce without first pursuing ADR (thus demonstrating his belief that the parties could litigate without engaging in ADR). Though Afshan mentions this issue in her briefing, she does not renew her waiver argument on appeal and we therefore do not address it here.

In his opposition to Afshan's motion to enforce, Amin argued that the terms of the August 2019 Agreement required the parties to first engage in informal negotiation and ADR, which they had not done despite his constructive request. Amin emphasized that the parties agreed to dispute resolution instead of a "typical enforcement, remedy, and default provisions" as a financial safeguard as a "public hearing or judgment could conceivably start a domino effect of foreclosures across the entire range of marital assets." As proof of such intent, Amin points to Section 2.5 of the Agreement, in which Afshan and Amin explicitly agreed to "cooperate with the other party" to ensure stability across the parties' mortgaged holdings. Amin claimed that the parties "knew that if Afshan wanted a cash payment, it was very likely that I would not be able to pay it within one year of the decree" so the 12 percent interest was the agreed remedy in the event of his untimely payment.

The superior court granted Afshan's motion to enforce and issued judgment against Amin in the amount of $7,814,570.28[8] and awarded Afshan her attorney fees and costs. The court found that the dispute resolution provision of the Agreement did not apply to the equalizing payment because it was limited to "issues in the interpretation or implementation of the Agreement" or "if essential terms ha[d] been omitted from the Agreement". The court found that it had the authority to remedy Amin's breach because the terms of the Agreement were "clear" and "enforceable by the Court." The court denied Amin's motion for reconsideration.

Amin appeals.

---

[8] This included the equalizing payment principal, damages, and interest. In January 2022, the court issued a separate order awarding Afshan a portion of her requested attorney fees and costs in the amount of $39,121.

## II.   ANALYSIS

A.  The Superior Court's Granting of Afshan's Motion to Enforce

Amin argues that the superior court erred in granting Afshan's motion to enforce the Agreement's equalizing payment because the dispute was subject to the parties' ADR provision.  We agree.

We interpret CR 2A agreements by applying normal contract principles.  In re Marriage of Pascale, 173 Wn. App. 836, 841, 295 P.3d 805 (2013).  Where parties dispute a contract's language, a court determines parties' intent by analyzing the agreement's "objective manifestations" rather than the "unexpressed subjective intent" of the parties.  Matter of Est. of Petelle, 195 Wn.2d 661, 665, 462 P.3d 848 (2020) (quoting Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005)).  Generally, words in a contract are given their "ordinary, usual, and popular meaning."  Condon v. Condon, 177 Wn.2d 150, 162-63, 298 P.3d 86 (2013).  Courts may turn to the dictionary definition of an undefined contract term to assess its meaning.  Seattle Tunnel Partners v. Great Lakes Reinsurance (UK) PLC, 18 Wn. App. 2d 600, 611, 492 P.3d 843 (2021).  We review a trial court's interpretation of a contract de novo.  Pascale, 173 Wn. App. at 841.

Arbitrations are a matter of consent and, as such, contracting parties may decide which issues they wish to arbitrate.  Romney for Est. of Romney v. Franciscan Med. Grp., 199 Wn. App. 589, 598, 399 P.3d 1220 (2017).  Where parties have agreed to arbitrate particular matters, a court will decide whether a controversy is subject to an arbitration agreement.  RCW 7.04A.060(2).  Courts review the agreement to determine whether a dispute is arbitrable, and, when it determines the agreement covers the dispute, "the

[court's] inquiry ends because Washington strongly favors arbitration." Pascale, 173 Wn. App. at 842 (quoting Davis v. Gen. Dynamics Land Sys., 152 Wn. App. 715, 718, 217 P.3d 1191 (2009)).  Where any doubt exists regarding the applicability of arbitration, we resolve such doubts in favor of arbitration.  Id. (quoting Heights at Issaquah Ridge Owners Ass'n v. Burton Landscape Grp., Inc., 148 Wn. App. 400, 404, 200 P.3d 254 (2009)).

Once arbitrability has been established, the court must "leave consideration even in the clearest cases to the arbitrator."  Id. at 843.  We review a trial court's interpretation of the arbitrability of a dispute de novo.  Id. at 841.

In a nutshell, the parties disagree about whether the attempted collection of the equalizing payment is an "issue aris[ing] in connection with . . . the interpretation or implementation of this Agreement" or implicates "essential terms [that] have been omitted[.]"

On appeal, Afshan again contends that the Agreement's ADR provision was limited, and did not include issues of "enforcement."  She maintains that the enforcement of the equalizing payment did not raise issues of "interpretation," "implementation," or filling a gap of an "omitted essential term" that would trigger the ADR provision.[9]  We disagree.

"Implementation" is defined as "an act or instance of implementing something: the process of making something active or *effective*."   MERRIAM-WEBSTER ONLINE

---

[9] Afshan does not argue that Section 4.4 of the Agreement is permissive, despite the presence of the term "may" in that provision, which states, "If [negotiations are] not successful, either party may submit the matter to [ADR]."  In other words, by not arguing for such an interpretation of Section 4.4, Afshan concedes that, if the dispute did in fact implicate the "interpretation or implementation" of the Agreement, she did not have the discretion to decline ADR.  See State v. Elliott, 114 Wn.2d 6, 15, 785 P.2d 440 (1990) ("This court will not consider claims insufficiently argued by the parties.").

DICTIONARY, https://www.merriam-webster.com/dictionary/implementation (last visited Oct. 3, 2022) (emphasis added).  The plain language of the Agreement suggests that the parties intended for the ADR clause to apply broadly to any issue that would *effectuate* the terms of the Agreement.  An issue related to enforcing Amin's equalizing payment to Afshan would fall under the scope of "implementing" the terms of the Agreement.

Alternatively, this issue may involve the "interpretation" of the contract or may implicate a "missing essential term."  That is, while it is clear that Amin has not made the payment required, it may be unclear whether there is any other enforcement mechanism or remedy other than accrual of 12 percent interest.  Similarly, it is unclear whether the Agreement would permit the indefinite accrual of 12 percent interest, which may be a contingency that was not contemplated by the parties and is missing resolution.  These issues of interpretation—both the "clear" issue of Amin's failure to pay and the thornier ones related to remedies—should go to a mediator and then arbitrator, who will issue a binding decision enforceable in court.  Pascale, 173 Wn. App. at 843.[10]

Afshan further argues that, because the Agreement states that its terms are "enforceable in court," issues of enforcement "were reserved for the court, and not subject to arbitration."

This reading would swallow the contract as a whole, as Afshan and Amin stipulated that the entire Agreement was enforceable in court.  At a minimum, Afshan's interpretation

_____

[10] Afshan finds additional support for her argument that Amin was required to promptly pay the equalizing payment when it was due in the dissolution decree's language requiring both parties to "pay debts as required" by the Agreement.  As the decree provides no additional requirements for payment outside of the Agreement itself, its directive to the parties to pay their debts is subject to the same defects as the Agreement.

would undermine, again, the parties' broad ADR provision. We interpret contracts as a whole, seek to give meaning to each provision, and seek to harmonize contract terms that may appear to conflict. Nishikawa v. U.S. Eagle High, LLC, 138 Wn. App. 841, 849, 158 P.3d 1265 (2007). In order to harmonize contract terms, we give greater weight to specific, rather than general terms. Id.

Reading the contract as a whole, we conclude that the parties agreed that the Agreement would be binding and enforceable in court for those topics not covered by the Agreement's ADR process, but they explicitly agreed to resolve certain disputes through a succession of escalating measures: informal negotiation, then mediation, then binding arbitration. Section 4.4 of the parties' Agreement permitted Amin to trigger the ADR provision for issues related to implementation, which then made the ADR procedure mandatory for Afshan, as discussed supra.

Furthermore, Section 4.4 directly supported Section 2.5, wherein the parties agreed to cooperate to "avoid or mitigate" actions that might jeopardize the parties' property loans. Sections 4.4 and 2.5 can be read harmoniously with Section 4.1's enforceability clause because, here, Afshan could certainly, e.g., reduce an arbitration award to a court judgment for the equalizing payment Amin was contractually required to pay her, along with the accruing 12 percent interest for late payment. This court concludes however that she first was required to comply with the Agreement's ADR provision.

Despite Afshan's claims she would not have agreed to arbitrate issues of "execution on a judgment," we are bound by the parties' objective manifestations of intent to first engage in ADR within the Agreement before seeking court enforcement of a

9

binding arbitration award as a final step.[11]

Amin also argues that the superior court erred in denying his motion for reconsideration. Given our analysis above, we agree. We review a trial court's order denying a motion for reconsideration for an abuse of discretion. Phillips v. Greco, 7 Wn. App. 2d 1, 9, 433 P.3d 509 (2018). As we conclude that the superior court erred in granting Afshan's motion to enforce the Agreement and entering a judgement against Amin for the equalizing payment, the superior court abused its discretion in denying Amin's motion for reconsideration.

B. Attorney Fees

Amin contends that the superior court erred in awarding Afshan her attorney fees and entering a judgement for attorney fees and costs. He requests that this court reverse the fee award and award him fees. We agree.

A superior court may grant attorney fees where a request is based on the terms of a contract. Gander v. Yeager, 167 Wn. App. 638, 645, 282 P.3d 1100 (2012). We review a superior court's discretionary decision to award attorney fees for an abuse of discretion. Id. at 645.

Section 4.2 of the parties' Agreement states, "Any party failing to carry out the terms of this Agreement shall be responsible for any court costs and reasonable attorney's fees of the other party incurred as the result of such failure." The superior court awarded attorney fees and costs to Afshan as it concluded, erroneously, that she was

---

[11] As a result of our decision to reverse and remand we do not address Amin's additional challenges to the superior court's findings of fact that he committed a material breach of the Agreement or that his breach was the basis for the non-applicability of the ADR provision.

entitled to enforce the equalizing payment provision without first pursuing ADR.

Because we reverse the superior court's decision, we reverse the award of attorney fees to Afshan. Further, because we find that Afshan "failed to carry out" the ADR provisions of the Agreement, we direct the superior court to award Amin reasonable attorney fees in defending against the motion to enforce.

Both parties request attorney fees on appeal. A prevailing party is entitled to reasonable attorney fees on appeal if permitted by a contract and a party makes the request pursuant to RAP 18.1(a). In re Guardianship of Wells, 150 Wn. App. 491, 503, 208 P.3d 1126 (2009). For reasons discussed above, we award Amin his reasonable attorney fees on appeal. While it is clear that Amin did not make the equalizing payment, there is also no dispute that he has begun to incur interest of 12 percent, which may be the only remedy permitted by the Agreement. That question ultimately is for the arbitrator to resolve. In that sense, we are only reviewing this case on the limited issue of whether the dispute over the equalizing payment was subject to the Agreement's ADR provision. Under that narrow scope, we conclude that Afshan failed to comply with the Agreement's ADR provision and Amin is therefore entitled to attorney fees.

## III.   CONCLUSION

We reverse and remand this matter to the superior court to direct the parties to comply with the ADR provision in the Agreement and award Amin his reasonable attorney fees both for opposing the motion to enforce and those incurred on appeal.



Díaz, J.

WE CONCUR:

_Chung, J._

_Mann, J._