[No. 61627-2.    En Banc.    March 30, 1995.]

STANLEY H. MOREMAN, *Petitioner*, v. WILBERT BUTCHER, *Respondent*.

*Roach Law Offices, P.S.,* by *Patrick T. Roach* and *Jeffrey T. Sperline,* for petitioner.

*Critchlow, Williams, Schuster, Malone & Skalbania,* by *Eugene G. Schuster* and *Scott N. Naccarato,* for respondent.

TALMADGE, J. — The present case involves the lawful scope of a trial court's contempt power. The case comes to this court on review of an unpublished Court of Appeals decision vacating the contempt order of the Franklin County Superior Court. We reverse the Court of Appeals and remand the case to the trial court for reinstatement of the contempt order.

## FACTS

In April 1992, Mrs. Eloise McClendon's house in Pasco suffered fire damage. She filed a claim with her insurance company and received $36,000. Respondent Wilbert Butcher, whose son is married to Mrs. McClendon's granddaughter, met with Mrs. McClendon and the two agreed that Mr. Butcher would oversee the renovation of the damaged residence. Mrs. McClendon placed the insurance proceeds in a joint account with Mr. Butcher.

Because Mr. Butcher was not a licensed and bonded contractor, he engaged the services of Petitioner Stanley Moreman to be in charge of the work. As part of the renovation, Mr. Butcher ordered kitchen cabinets at a cost of $2,065. He stored them in a rented storage unit with the remainder of Mrs. McClendon's furniture from the damaged house. The contract for the storage unit was in both Mr. Butcher's and

Mrs. McClendon's names. Only Mr. Butcher had access to the storage unit, however, as he had the only key to the lock on the door. Mr. Moreman never saw the cabinets and was never in the rental unit.

In the summer of 1992, a money dispute arose between Mrs. McClendon and Mr. Butcher. Mr. Butcher indicated that he did not intend to turn over the cabinets to Mr. Moreman for installation until Mrs. McClendon satisfied Mr. Butcher's complaint.[1]

Mr. Moreman brought a replevin action in the Franklin County Superior Court on August 4, 1992, against Mr. Butcher for the delivery of certain kitchen cabinets Mr. Moreman alleged were in Mr. Butcher's possession. On the same day, Mr. Moreman obtained an order requiring Mr. Butcher to show cause why he should not immediately deliver the cabinets to Mr. Moreman.[2]

Mr. Butcher responded by affidavit on August 6, 1992, stating the cabinets were in his possession, but he would not deliver them until he received money he claimed he was due. On August 10, 1992, the trial court entered an order requiring Mr. Butcher immediately to deliver the cabinets. Mr. Butcher failed to comply. Consequently, on August 26, 1992, the trial court entered another order requiring Mr. Butcher to show cause why he should not be held in contempt for violating the August 10 order.

---

[1]While Moreman and Butcher contested the possession of the kitchen cabinets, Mrs. McClendon, a grandmother, was deprived of the use of her kitchen sink and was compelled to obtain her drinking water and do her dishes in her bathtub for a period of six months. She was unamused by this turn of events:

"Q: Okay. Have you been substantially inconvenienced as a result of not having these cabinets?

"A: Well, yes. I have to get all my water out of the bathroom. I have to pack water in two tubs to wash my dishes. I have to go there and get my drinking water.

"Q: You simply can't use the water in your kitchen at this time?

"A: No, because there's no water there. I mean it's all plugged off." Report of Proceedings (Dec. 28-29, 1992), at 47-48.

[2]Although the record is not clear, the motion to show cause appeared to be for the purpose of preserving the cabinets, the subject of the replevin action.

At the hearings held on September 8, December 28, and December 29, 1992, Mr. Butcher testified he could not comply with the court's order to deliver the cabinets because he no longer possessed them. He could not account for their disappearance, however, other than to speculate that someone had stolen them from the storage unit where he had initially placed them.

The trial court decided Mr. Butcher had not presented credible evidence of his claimed inability to comply with the order to deliver the cabinets, and held him in contempt by an order entered on December 29, 1992:

> On 8/10/92 the court ordered Mr. Butcher to immediately return cabinets to Plaintiff; subsequently Mr. Butcher wilfully failed to return the cabinets that were in his control. More than 4 months have elapsed with no compliance to the court order.

> Mr. Butcher is held in Contempt of Court. He is hereby placed in the custody of the Franklin County Sheriff's office to be placed in the Franklin County jail. He shall remain in jail until he purges himself of contempt by causing the cabinets to be returned to the plaintiff.

Clerk's Papers, at 27.

Mr. Butcher did not purge himself of contempt at a subsequent hearing held on February 2, 1993.

On January 11, 1993, the trial court entered Findings of Fact in support of its Order of Contempt. The Findings of Fact set forth the trial court's reasons for determining that Mr. Butcher had failed to meet his burden of persuasion with regard to his alleged inability to comply with the trial court's order and holding him in contempt. Mr. Butcher has not assigned error to the Findings of Fact, and they are therefore verities on appeal. RAP 10.3(g); *State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).[3]

In early January 1993, Mr. Butcher applied to the Court of Appeals for emergency relief. The commissioner held that

---

[3]Neither party designated the Findings of Fact as part of the record although the Franklin County clerk transmitted them to the Court of Appeals. The clerk of the Court is hereby directed to obtain the Findings of Fact pursuant to RAP 9.10(1) so that they may become part of the record of this case.

upon the posting of a sufficient supersedeas bond, Mr. Butcher could be released from jail. Mr. Butcher was released on January 27, 1993.

On review, the Court of Appeals subsequently vacated the Order of Contempt and remanded, holding that the two required elements for a finding of contempt for perjury were absent in this case, relying on *State v. Estill*, 55 Wn.2d 576, 349 P.2d 210, 89 A.L.R.2d 1251 (1960).

### ISSUE

Did the trial court abuse its discretion by entering an order of contempt against a person who refused to obey a trial court order to produce property in dispute in an action and failed to meet his burden of persuading the trial court that he was unable to comply with its order?

### ANALYSIS

"Whether contempt is warranted in a particular case is a matter within the sound discretion of the trial court; unless that discretion is abused, it should not be disturbed on appeal." *In re King*, 110 Wn.2d 793, 798, 756 P.2d 1303 (1988). Because Mr. Butcher has not assigned error to the Findings of Fact, however, the only issue before this court is whether the trial court abused its discretion by entering the Order of Contempt based on its undisputed findings. An abuse of discretion is present only if there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); *Coggle v. Snow*, 56 Wn. App. 499, 506-07, 784 P.2d 554 (1990). In the "context of civil contempt, the law presumes that one is capable of performing those actions required by the court . . . [and the] inability to comply is an affirmative defense." *King*, 110 Wn.2d at 804. Thus, at the show cause hearing, Mr. Butcher had both the burden of production and the burden of persuasion regarding his claimed inability to comply with the court's order.[4] *King*, 110 Wn.2d at 804. Mr. Butcher must "offer

---

[4]That the burden of persuasion lies with the contemnor is of ancient lineage in Washington law: "The rule is that the burden of showing inability to comply

evidence as to his inability to comply and the evidence must be of a kind the court finds credible." *King*, 110 Wn.2d at 804. He failed to carry his burdens and the trial court found him in contempt.

The trial court's undisputed Findings of Fact indicated that Mr. Butcher failed in this burden of persuasion. The trial court noted in its findings that Mr. Butcher was not a licensed contractor and had no claim to the cabinets. Mr. Butcher never advised the trial court that the cabinets were stolen until September 8, 1992, although the trial court's order to produce the cabinets was entered on August 10, 1992. Mr. Butcher advised the court that he possessed the cabinets, but the storage shed where the cabinets allegedly were located did not contain the cabinets when Mrs. McClendon's insurance adjuster viewed the storage facility. Mr. Butcher offered the incredible story that he removed the cabinets before the adjuster's visit and replaced them thereafter. Finally, Mrs. McClendon testified that she overheard Mr. Butcher after the show cause hearing tell his son that he still had the cabinets and he was not going to give them back.

The Court of Appeals, however, without any reference to the record or to the wording of the Order of Contempt, concluded the trial court had found Mr. Butcher in contempt of court for perjury. Citing *State v. Estill*, 55 Wn.2d 576, 577, 349 P.2d 210, 89 A.L.R.2d 1251 (1960), a case pertaining to a post-trial summary contempt adjudication for a witness's alleged perjury, the Court of Appeals noted that in order to hold someone in contempt for perjury, "(1) the court must have judicial knowledge of the falsity and (2) the false testimony must obstruct the court in performance of a judicial function." *Moreman v. Butcher*, unpublished opinion noted at 73 Wn. App. 1027 (1994), slip op. at 3. Because neither element was present in this case, the Court of Appeals held the trial court had abused its discretion, and vacated the Order of Contempt.

---

with an order of this nature is upon the respondent. This is so well settled that we deem it unnecessary to make any citations from the numerous lines of authorities upon the subject." *Smith v. Smith*, 17 Wash. 430, 432, 50 P. 52 (1897).

The trial court did not find Mr. Butcher in contempt for perjury, however. The Order of Contempt speaks only of prospective coercion, not retrospective punishment. The word "perjury" is absent. Moreover, the record is replete with the trial court's statements that the Order of Contempt was not for perjury:

"The purpose of this [Order of Contempt] is coercion."

"No bail at all, not for coercive contempt. The whole purpose is to coerce him."

"Well, he's not in jail for lying."

"Now, he didn't get in jail for committing perjury any more than anybody else is put in jail for perjury when you don't believe their story that they are incapable of complying with the order."[5]

The Court of Appeals evidently assumed because the trial court continually stated it did not believe Mr. Butcher's testimony, the intent of the Order of Contempt was to punish him for perjury. Because the record is plainly to the contrary, the Court of Appeals' reliance on the *Estill* case was misplaced. The appropriate standard for resolution of this case is found in *King*.[6]

Washington policy has long been that courts have the authority to coerce compliance with lawful court decisions and process by imposition of appropriate sanctions. *E.g.*,

---

[5]Report of Proceedings (Dec. 30, 1992), at 12-13; Report of Proceedings (Jan. 14, 1993), at 3, 10.

[6]Within a month after Mr. Butcher's imprisonment, the Court of Appeals commissioner ordered the trial court to free Mr. Butcher upon the posting of adequate supersedeas bond. The commissioner labored under the misconception that a stay was available to Mr. Butcher as a *matter of right*. This ruling had the result of removing any further coercive effect of the contempt order.

RAP 8.1(b)(3) and RAP 8.3 give appellate courts discretion to stay the enforcement of trial court decisions. This authority should be exercised carefully when the trial court has entered a coercive contempt order. RAP 8.1(b)(3) requires the court to consider (1) whether the moving party can demonstrate debatable issues, and (2) a comparison of the injury that would be suffered by the moving party in the absence of a stay with the injury to the nonmoving party if a stay is issued. In deciding whether or not to grant a stay of a coercive contempt order, the appellate court should weigh the factors set forth in RAP 8.1(b)(3) with care and may condition the granting of the stay on the posting of a supersedeas bond or other security as noted in that rule.

RCW 7.21.010, .030.[7] Mr. Butcher had the key to the jailhouse door in his possession at all times. He could purge himself of contempt by responding to the trial court's order. Moreover, if the incarceration became punitive rather than coercive in nature, he could raise that issue with the trial court. *King*, 110 Wn.2d at 804-05. Mr. Butcher chose to disobey the trial court's order at his risk.

Reversed and remanded to the trial court for reinstatement of the Order of Contempt.

DURHAM, C.J., and UTTER, DOLLIVER, SMITH, GUY, JOHNSON, MADSEN, and ALEXANDER, JJ., concur.

---

[7]RCW 7.21.010(1)(b), which gives one definition of contempt as "[d]isobedience of any lawful judgment, decree, order, or process of the court", contains exactly the same wording, except for the word "the", as the definition of contempt the territorial Legislature enacted in 1869. Laws of 1869, ch. LIX, § 667, p. 167.