**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

BRANDEE LYNN MAYTON,

               Appellant,

      v.

PETER EARL CONEWAY,

               Respondent.

DIVISION ONE

No. 80486-3-I

UNPUBLISHED OPINION

DWYER, J. — Brandee Mayton appeals from the superior court's order finding her in contempt of court for denying Peter Coneway rightful summer residential time with their children. Mayton contends that the superior court erred by ruling that, as a result of Mayton's request to stay Coneway's exercise of his summer residential time, a request the court granted, Mayton had forfeited her right to notice of Coneway's chosen summer residential dates by April 1, 2019. Mayton also asserts that the superior court, in finding her to be in contempt, improperly relied on an order that it did not have jurisdiction to enter. Additionally, Mayton asserts that the superior court erred both by finding that she intended to deprive Coneway of his right to residential time and by awarding Coneway attorney fees, a civil penalty of $100, and travel expenses incurred

when he attempted to retrieve the children for the summer visitation. The superior court did not err in any of these respects. Accordingly, we affirm.

I

Mayton and Coneway are the parents of twin daughters born on April 3, 2015. A parenting plan was entered by a Texas court in June 2017. After the Texas court entered the parenting plan, Mayton relocated with the children to Washington. Coneway continued to reside in Texas.

Under the parenting plan, Coneway was entitled to extended summer residential time with the children after they turned four years old on April 3, 2019. The extended summer residential time amounted to either (1) 30 days if the parents resided within 100 miles of each other or (2) 42 days if they resided more than 100 miles from each other. In either event, to receive his choice of dates for the extended summer residential time, Coneway was to provide Mayton notice of those dates by April 1. If he did not provide notice by April 1, an extended summer residential schedule was set by default under the parenting plan. Under the default schedule, Coneway's summer residential time was to begin on June 15 and end on July 27.[1]

---

[1] The provisions of the parenting plan that regard Coneway's extended summer residential time state, in pertinent part:

2.    *Standard Possession Order*
      IT IS ORDERED that when the children reach four years of age, Peter Earl Coneway shall have possession of and access to the children as set forth in the following Standard Possession Order.
. . . .
(d)    Parents Who Reside 100 Miles Apart
      Except as otherwise expressly provided in this Standard Possession Order, when Peter Earl Coneway resides more than 100 miles from the residence of the child, Peter Earl Coneway shall have the right to possession of the child as follows:
. . . .

On October 9, 2018, Mayton filed a petition in the Snohomish County Superior Court requesting a finding of adequate cause to modify the parenting plan. Specifically, Mayton sought to modify Coneway's right to extended summer residential time with the children.

On October 31, the superior court held a hearing to decide whether adequate cause existed to modify the parenting plan.[2] The superior court explained that a conference was needed with the Texas court that entered the parenting plan to determine which state should exercise jurisdiction pursuant to the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), chapter 26.27 RCW. In the following months, the superior court attempted, without success, to schedule a conference with the Texas court.

---

4. Extended Summer Possession by Peter Earl Coneway –
With Written Notice by April 1 – If Peter Earl Coneway gives Brandee Lynn Mayton written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, Peter Earl Coneway shall have possession of the child for forty-two days beginning no earlier than the day after the child's school is dismissed for the summer vacation and ending no later than seven days before school resumes at the end of the summer vacation in that year, to be exercised in no more than two separate periods of at least seven consecutive days each, with each period of possession beginning and ending at 6:00 p.m. on each applicable day, as specified in the written notice. These periods of possession shall begin and end at 6:00 p.m. on each applicable day.
Without Written Notice by April 1 – If Peter Earl Coneway does not give Brandee Lynn Mayton written notice by April 1 of a year specifying an extended period or periods of summer possession for that year, Peter Earl Coneway shall have possession of the child for forty-two consecutive days beginning at 6:00 p.m. on June 15 and ending at 6:00 p.m. on July 27 of that year.

[2] When a superior court judge rules on a motion to modify a ruling made by a court commissioner, we review the ruling made by the judge, not by the commissioner. In re Marriage of Maldonado, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). Mayton's pro se opening brief does not pay heed to this principle. Instead, its focus is almost exclusively on the actions of a court commissioner. The Brief of Respondent adopts a similar approach. Rather than penalize a pro se litigant for misapprehending our rules, we choose to address the merits of this dispute, as briefed by the parties. Thus, unless the context dictates otherwise, we reference the commissioner as the "superior court."

On March 5, 2019, Mayton filed a motion requesting that the superior court exercise temporary emergency jurisdiction over the parenting plan pursuant to RCW 26.27.231(1).[3] In the motion, Mayton detailed multiple incidents of alleged abuse by Coneway against her and the children. Mayton requested that the superior court stay the provisions of the parenting plan that entitled Coneway to exercise residential time with the children until the necessary conference was held with the Texas court.

On April 1, 2019, the superior court heard Mayton's motion for temporary emergency jurisdiction. Under the parenting plan, Coneway was required to provide notice to Mayton of his extended summer residential dates on that day. During the hearing, the superior court explained that, for the court to grant Mayton's request to stay the provisions of the parenting plan that entitled Coneway to exercise residential time with the children, Mayton must forfeit her right to notice of Coneway's chosen dates by April 1:

> [I]n order to enter this order, she is, in effect, waiving her right to
> have specified dates by April 1st, [be]cause I'm certainly not going
> to have a situation where [Mayton] uses this as a reason to deny
> [Coneway his right to residential time]. . . . So, isn't that fair?
> . . . .
> [I]n order to do this, she needs to waive her right to notice of dates
> prior to the final hearing.

Accordingly, the minute entry from the hearing stated, "The mother shall waive her right to notice that the father is exercising his residential schedule

---

[3] RCW 26.27.231(1) provides:
A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with abuse.

rights. It is not reasonable to expect him to supply the mother with the required amount of notice in light of today's ruling."

Knowing that the superior court would stay Coneway's right to residential time only if she waived her right to notice by April 1, Mayton prepared and presented the order that was entered on April 1, 2019. The order stated that

> the [parenting plan] . . . shall be temporarily stayed such that the overnight visitation that comes into effect when the minor children turn 4 shall be stayed,[4] and pending a UCCJEA conference or a declination of jurisdiction by a Texas court [or the filing of a petition for modification in Texas by Mayton], the [parenting plan] shall be enforced as if the minor children have not yet reached the age of 4 until June 15, 2019, at which time this order shall end.

On May 29, 2019, Mayton requested another hearing. At this time, the issue of UCCJEA jurisdiction had still not been resolved with the Texas court. Because the Texas court had not yet declared its position, Mayton requested that the hearing take place on June 17 "for the sole purpose of requesting an extension of [the stay]."

On June 17, the superior court conducted a hearing and declined to extend the stay. During the hearing, Coneway provided notice to Mayton that his chosen extended summer residential dates were July 5 through August 15. The court stated that it would "enter an order indicating that, because of the court action, the mother has waived her right to notice of [Coneway's] visitation time [by April 1]." That same day, the superior court entered an order stating that

---

[4] The superior court's order stayed all of the provisions of the parenting plan regarding Coneway's right to overnight visitation after the children reached the age of four. This included, for example, Coneway's right to visitation on certain weekends during the children's school year. However, Mayton's primary concern for bringing the motion for temporary emergency jurisdiction regarded Coneway's right to extended summer residential time.

Mayton "previously waived her right to notice of [Coneway's] summer visit this year by [April 1]. [Coneway] indicates now an intent for his visit to begin [on July 5]."

On June 21, 2019, the superior court conferred with the Texas court. The Texas court ruled that it was an "inconvenient forum" and, therefore, "decline[d] jurisdiction in favor of the [Washington] Court."[5]

Coneway subsequently purchased airline tickets to fly to Washington on July 4 and back to Texas with the children on July 5. On June 24, Coneway sent an e-mail to Mayton informing her that he had purchased airline tickets for himself and the children to depart from Seattle on July 5. That same day, Mayton responded to Coneway's e-mail stating that she would not allow him to exercise his extended summer residential time because he had failed to provide proper notice of his chosen dates.[6] On June 27, Coneway sent another e-mail to Mayton informing her that he planned to retrieve the children from her house on July 5 at 8:00 a.m. Mayton responded by directing Coneway to her previous e-mail response.

On July 4, Coneway flew from Texas to Washington. The following day, Coneway arrived at Mayton's house to retrieve the children. He was unsuccessful. He tried telephoning Mayton several times, but she did not answer. Ultimately, Coneway left the house without the children in order to make

---

[5] This oral ruling was followed by entry of a written order on June 28, 2019.
[6] Mayton's e-mail to Coneway on June 24 stated:
I wanted to inform you that since you did not give me any notice the default language under the decree kicks in and your default period was to start on June 15 and so you are not in compliance and I did not agree to change the visitation even if notice was waived.

the return flight to Texas.  Coneway spent $1,442.02 on airfare and other expenses while he was traveling to retrieve the children.

On July 22, Coneway filed a motion for contempt, asserting that Mayton was in violation of the parenting plan for denying him his right to residential time with the children.

On August 9, the superior court heard the motion for contempt. Referencing the June 17 order, the superior court found that Mayton had waived her right to notice by April 1.  As a result, the superior court found Mayton to be in contempt of court for denying Coneway his right to residential time with the children.  The superior court awarded Coneway 42 days of makeup residential time and attorney fees for having to bring the motion.  Additionally, the superior court ordered Mayton to reimburse Coneway for the travel expenses he had incurred and to pay a civil penalty of $100.

Mayton filed a motion for reconsideration, which the superior court denied. Mayton then filed a motion for revision, which was also denied.  Subsequently, Mayton filed another motion for reconsideration, which was denied.

Mayton appeals.

## II

Mayton first contends that the superior court erred by finding that she had waived her right under the parenting plan to receive notice of Coneway's extended summer residential dates by April 1, 2019.  However, the record plainly shows to the contrary.

"Waiver is an equitable doctrine that can defeat a legal right where the facts show that the party relinquished a known right, or conduct shows the party relinquished known rights." McLain v. Kent Sch. Dist. No. 415, 178 Wn. App. 366, 378, 314 P.3d 435 (2013). "'The doctrine of waiver ordinarily applies to all rights or privileges to which a person is legally entitled.'" Schroeder v. Excelsior Mgmt. Grp., LLC, 177 Wn.2d 94, 106, 297 P.3d 677 (2013) (internal quotation marks omitted) (quoting Bowman v. Webster, 44 Wn.2d 667, 669, 269 P.2d 960 (1954)).

The record shows that Mayton both knew of and intentionally relinquished her right under the parenting plan to receive notice of Coneway's extended summer residential dates by April 1, 2019. In fact, Mayton's affidavit in support of her motion for temporary emergency jurisdiction quotes the April 1 notice requirement from the parenting plan.

Mayton plainly relinquished this right. At the hearing on Mayton's motion for temporary emergency jurisdiction, the superior court made clear that it would enter an order staying Coneway's right to residential time only on the condition that Mayton waived her right to notice by April 1. Consistent with this admonition, the minute entry from the hearing stated, "The mother shall waive her right to notice that the father is exercising his residential schedule rights." Indeed, being aware of this waiver requirement, Mayton prepared and presented the order that was signed by the court. Thus, Mayton's conduct unequivocally shows her intent to waive her right to notice by April 1 as a condition of receiving the ruling she sought at the hearing. See McLain, 178 Wn. App. at 379.

8

Accordingly, the superior court did not err by finding that Mayton had waived her right to notice of Coneway's chosen extended summer residential dates with the children by April 1, 2019.

III

Mayton next asserts that the superior court wrongly considered the June 17 order when it found her to be in contempt of court. Specifically, Mayton contends that the June 17 order improperly modified the parenting plan by stating that she had previously waived her right to notice of Coneway's chosen residential dates. We disagree.

Under the UCCJEA, a Washington court generally cannot modify a child custody determination made by a court of another state.[7] RCW 26.27.221. At the time of the June 17 hearing, the Texas court had preference under the UCCJEA and was the court with clear authority to act concerning the parenting plan. Accordingly, the superior court was not authorized to modify the parenting plan at that time. And it did not do so.

The UCCJEA defines "modification" as "a child custody determination that changes, replaces, supersedes, or is otherwise made after a previous

---

[7] A Washington court can modify a child custody determination made by a court of another state as follows:

> Except as otherwise provided in RCW 26.27.231, a court of this state may not modify a child custody determination made by a court of another state unless a court of this state has jurisdiction to make an initial determination under RCW 26.27.201(1)(a) or (b) and:
> (1) The court of the other state determines it no longer has exclusive, continuing jurisdiction under RCW 26.27.211 or that a court of this state would be a more convenient forum under RCW 26.27.261; or
> (2) A court of this state or a court of the other state determines that the child, the child's parents, and any person acting as a parent do not presently reside in the other state.

RCW 26.27.221.

determination concerning the same child, whether or not it is made by the court that made the previous determination." RCW 26.27.021(11). In addition, it provides that a "child custody determination" is "a judgment, decree, parenting plan, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child." RCW 26.27.021(3).

The superior court's June 17 order did not modify the parenting plan. This order stated that Mayton "previously waived her right to notice of [Coneway's] summer visit this year by [April 1]. [Coneway] indicates now an intent for his visit to begin [on July 5]." The June 17 order merely recited that Mayton—of her own volition—had already waived her right to notice. This recital was not a modification.

The June 17 order did not modify the parenting plan. The superior court did not err in considering this order when it found Mayton to be in contempt.

IV

Mayton additionally contends that the superior court erred by finding that she intended to deny Coneway his right under the parenting plan to summer residential time with the children. We disagree.

"'Whether contempt is warranted in a particular case is a matter within the sound discretion of the trial court; unless that discretion is abused, it should not be disturbed on appeal.'" Moreman v. Butcher, 126 Wn.2d 36, 40, 891 P.2d 725 (1995) (quoting In re Pers. Restraint of King, 110 Wn.2d 793, 798, 756 P.2d 1303 (1988)). "An abuse of discretion is present only if there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable

grounds, or based on untenable reasons." Moreman, 126 Wn.2d at 40 (citing State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971); Coggle v. Snow, 56 Wn. App. 499, 506-07, 784 P.2d 554 (1990)).

The UCCJEA requires a court to find a party in contempt of court "[i]f, based on all the facts and circumstances, the court finds after hearing that the parent, in bad faith, has not complied with the order establishing residential provisions for the child." RCW 26.09.160(2)(b). Thus, for a trial court "to enter a contempt order pursuant to RCW 26.09.160, [it] must first make a specific finding that the parent has acted in bad faith or committed intentional misconduct, such as disobeying a prior court order." In re Marriage of James, 79 Wn. App. 436, 441, 903 P.2d 470 (1995).

In finding that Mayton intended to deny Coneway his right to residential time under the parenting plan, the superior court stated:

> It seems clear to the Court that Ms. Mayton was aware [that Coneway was not required to provide notice by April 1] because there is an order . . . on June 17th that says, "Further, Petitioner previously waived her right to notice of Respondent's summer visit this year by April 1st, 2019. Respondent indicates now an intent for his visit to begin on July 5th, 2019." Mr. Coneway put in an order by this Court that she was on notice that he intended to exercise his visitation of the 42 days over the summer. Instead of coming to court and asking the Court to restrain that visit, she did nothing. . . . [I]t seems pretty far-stretched that when she knew that on the 17th of June, that she didn't do anything to bring this matter before the Court, knowing that he had made arrangements and planned to exercise that visitation [on July 5] . . . .
>
> . . . He came here to pick up the children and then was denied visitation. . . . [T]here is an ongoing pattern by Ms. Mayton, in my opinion, to control access to the children by Mr. Coneway. The Court finds that her actions in this case were willful and that she intended to deny Mr. Coneway his visitation rights under the parenting plan. . . . So, I do find her in contempt.

The superior court did not abuse its discretion by finding Mayton to be in contempt. Mayton waived her right to notice by April 1. Although Mayton asserts on appeal that Coneway was required to provide notice of his desired dates on June 15, she did not raise this argument to the superior court when the court heard the motion for contempt. Indeed, the superior court had already rejected this claim during the hearing on June 17.[8] In any event, if Mayton believed that the superior court incorrectly determined that Coneway was not required to provide notice of his dates by June 15, she could have filed a motion seeking to clarify the matter. Yet she did not. Instead, she sent an e-mail to Coneway stating that he was not entitled to extended summer residential time with the

---

[8] At the June 17 hearing, the superior court rejected Mayton's assertion that Coneway was required to give notice on June 15:

| [Mayton's Counsel]: | Okay. [Mayton] recalls that you said [during the April 1 hearing], well, it—he had to notify . . . her in writing by June 15th, which was Friday. And I was just looking at your order. Is there anything—Madam Clerk, anything the—in the notes, the minutes, about June 15th— |
| The Court: | No. |

Mayton was referencing the following exchange that occurred between herself and her attorney during the April 1 hearing:

| The Court: | —she's—in order to [stay the provisions], she needs to waive her right to notice of dates prior to the final hearing. Okay? |
| [Mayton's Counsel]: | Do you understand— |
| Ms. Mayton: | So— |
| [Mayton's Counsel]: | — what[] [the court]'s saying? |
| Ms. Mayton: | So, by June 15th, he has to—he has to notify me on June 15th— |
| [Mayton's Counsel]: | That's right. |
| Ms. Mayton: | —for the dates? |
| [Mayton's Counsel]: | Yeah. |

In the passage quoted above, the superior court stated that Mayton "needs to waive her right to notice of dates *prior to the final hearing*." (Emphasis added.) This refers to a hearing on the Texas court's exercise of jurisdiction under the UCCJEA. When Coneway provided notice of his dates on June 17, the hearing on whether the Texas court would exercise jurisdiction had not yet occurred. Indeed, the very reason that Mayton requested the hearing on June 17 was to extend the stay pending the Texas court's determination, which, at that time, was scheduled for June 19.

12

children starting on July 5. Then, knowing that Coneway planned to fly from Texas to Washington to pick up the children, Mayton ignored his telephone calls after he arrived at her house, leaving him no choice but to fly back to Texas without the children.

Finally, even if Coneway had failed to provide adequate notice of his desired residential dates to Mayton, he would still have been entitled to extended summer residential time under the parenting plan's default schedule. The default schedule provided for Coneway's extended summer residential time to begin on June 15 and end on July 27. July 5 falls within this time period. Therefore, Coneway was unquestionably entitled to retrieve the children on July 5.

Mayton's conduct demonstrates that she acted with the intent to deprive Coneway of his right under the parenting plan to extended summer residential time with the children. Therefore, the superior court did not abuse its discretion by finding Mayton to be in contempt of court.

V

Mayton asserts that the superior court erred by ordering her to pay Coneway's attorney fees, Coneway's travel expenses, and a $100 civil penalty. We disagree. Upon finding Mayton in contempt of court, the superior court properly ordered her to pay his attorney fees and the civil penalty. See RCW 26.09.160(2)(b)(ii)-(iii). The superior court was also authorized to award Coneway restitution for the expenses that he incurred in travelling to Washington to retrieve the children. See RCW 26.09.160(6) ("[T]his section authorize[s] the exercise of the court's power to impose remedial sanctions for contempt of court

and is in addition to any other contempt power the court may possess.); see also RCW 7.21.030(3) ("The court may . . . order a person found in contempt of court to pay a party for any losses suffered by the party as a result of the contempt."). Accordingly, the superior court did not err in entering its remedial sanctions against Mayton.

VI

In her reply brief, Mayton contends that the superior court acted on June 17 without having jurisdiction over the subject matter of this dispute. Thus, she reasons, any order was void and she could not be found in contempt of a void order.

Mayton's contention misapprehends subject matter jurisdiction and the basis for the existence of the UCCJEA. It goes without saying that courts in different states cannot create or eliminate subject matter jurisdiction in courts of a different state. That is a matter for state constitutions and legislatures. See, e.g., Boudreaux v. Weyerhaeuser Co., 10 Wn. App. 2d 289, 312-13, 448 P.3d 121 (2019) (discussing inability of foreign sovereigns to nullify Washington courts' subject matter jurisdiction); In re Marriage of McDermott, 175 Wn. App. 467, 307 P.3d 717 (2013). The problem that existed prior to the UCCJEA was that more than one state's courts could have subject matter jurisdiction over a particular dispute. The UCCJEA addresses which court with subject matter jurisdiction should exercise that jurisdiction and, necessarily, which courts should refrain.

The Texas court did not "give" a Washington general jurisdiction court subject matter jurisdiction over the dispute herein. That was accomplished by the Washington Constitution and legislative enactments. See Boudreaux, 10 Wn. App. 2d at 295-97. The Texas court, ultimately, decided not to *exercise* its subject matter jurisdiction. The relationship between the Texas and Washington courts was one of comity—not of judicial power. At all times, the Washington superior court—a general jurisdiction court created by the Washington Constitution—had subject matter jurisdiction over this dispute.

Accordingly, Mayton's claim to the contrary fails.

VII

Both Mayton and Coneway request an award of attorney fees on appeal. Coneway's claim for fees is based on RCW 26.09.160(2)(b)(ii). Because the superior court did not err by finding Mayton to be in contempt of court, we award attorney fees to Coneway. Indeed, a party that is awarded attorney fees pursuant to RCW 26.09.160 in the trial court "is entitled to an award of attorney fees on appeal to the extent the fees relate to the issue of contempt." In re Marriage of Rideout, 150 Wn.2d 337, 359, 77 P.3d 1174 (2003). To not award attorney fees to Coneway on appeal would effectively diminish the award of attorney fees entered by the superior court. This we will not do. Upon compliance with applicable rules, a commissioner of our court will enter an appropriate order awarding fees on appeal to Coneway.

Mayton's request for such an order is denied.

Affirmed.

_____  Dwyer, J.

We concur:

_____  _____  Mann, C.J.