IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| In the Matter of the Marriage of | |
|---|---|
| LARA BROOKE SEEFELDT, | No. 86502-1-I |
| Respondent, | DIVISION ONE |
| and | UNPUBLISHED OPINION |
| ALBERT WHITNEY COBURN, | |
| Appellant. | |

DíAZ, J. — Albert Coburn appeals from a March 2024 trial court order holding him in contempt and ordering him to pay his past due, proportional share of education expenses for his child. We affirm.

## I.    BACKGROUND

Albert Coburn and Lara Seefeldt share a child in common.[1] A 2018 final child support order required each parent to pay a proportional share of the child's educational expenses. The accompanying child support worksheet calculated

---

[1] Some of the background facts are derived from the first of our two unpublished prior decisions involving the parties. *See In re Marriage of Seefeldt*, No. 84010-0-I (Wash. Ct. App. Mar. 20. 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/840100.pdf.

Coburn's proportional share of the parties' combined income as 70 percent. And, as the parties agreed, the final parenting plan allocates sole decision-making authority for education to Seefeldt. For disputes over education-related support obligations, the parenting plan provides that any "new medical or educational services" which would require a financial contribution of over $500 or $100 per month are "subject to arbitration if the father gives written notice of objection within 1 week of receiving notice."

Seefeldt became dissatisfied with the educational and support services offered in the public school system during the COVID-19 pandemic and, for the 2021-2022 school year, enrolled the child in the Academy for Precision Learning (APL), a private school. Coburn did not object. However, the following year, in a proceeding seeking to modify parenting plan provisions, Coburn made a separate request to arbitrate enrollment at APL for the 5th grade.

In an April 21, 2022 order, the trial court denied Coburn's request to arbitrate. Noting Coburn's failure to object to enrollment at APL for the 4th grade, the trial court concluded that "[c]ontinuing at the same school for the balance of elementary school does not constitute 'new medical or educational services' such that it is subject to arbitration" under the parenting plan. The trial court rejected Coburn's argument that each year's enrollment at APL is a new educational service because the school requires parents to sign a new contract each year and observed that construing new educational services to begin at each level of schooling is in line with the child's "special needs and need for stability and consistency."

Nevertheless, the court determined that Coburn's acquiescence to enrollment in APL for elementary school "should not be considered agreement to her attendance through middle school and high school, even though APL is apparently a K-12 school." The court set forth a specific process for Coburn to object to enrollment at APL, or a different private school, for middle and high school. To that end, the court ordered Seefeldt to provide notice, by April 1, 2023, of her proposal for middle school and to indicate whether she was requesting that Coburn share tuition expenses. If Coburn wished to object, the order required him to "request arbitration of the issue" by May 1, 2023.[2] The order stated that "[i]f the father fails to invoke arbitration by May 1, 2023, the mother's school proposal (including the sharing of expresses) shall be deemed to be ratified for the period of 6th to 8th grade." The court's order was without prejudice to Coburn's ability to file a motion to modify or adjust child support "as permitted by state law." The court further provided that if Coburn filed such a motion within 10 days, he could request that relief be effective as of the February 2022 date that he filed his petition to modify the parenting plan. Coburn appealed the April 2022 order and this court affirmed.

Just before the April 1, 2023 deadline, Seefeldt notified Coburn that she intended to enroll the child at APL for middle school. Coburn did not file a motion to arbitrate or otherwise request arbitration.

In January 2024, after Coburn failed to pay his share of the tuition that had

---

[2] The order likewise sets forth the same process for high school, with specific dates in 2026 for Seefeldt's notice and Coburn's ratification or objection.

accrued for the 2023-2024 school year or sign APL's enrollment contract for the school year, Seefeldt filed a motion for contempt. Seefeldt requested, among other things, an order requiring Coburn to reimburse her for tuition she paid on Coburn's behalf and to pay attorney fees she incurred in bringing the contempt motion. In response, Coburn did not dispute his failure to pay his proportional share of tuition.

After a March 1, 2024 hearing, the trial court found Coburn in contempt for failing to pay his share of education expenses for the 2023-2024 school year.[3] The court observed that, despite the clear provisions of the April 2022 order, Coburn failed to file a motion or otherwise seek to arbitrate the issues of middle school enrollment and financial responsibility, although he had filed such a motion in the past and was "more than capable" of invoking arbitration. The court further noted that, while the inability to pay may be a valid defense to contempt, Coburn did not provide evidence, such as a financial declaration, tax documents, pay stubs for a relevant period of time, and/or bank account statements, which would have allowed the court to evaluate his ability to pay. Because Seefeldt had paid Coburn's share of tuition, $16,848, the court imposed judgment against Coburn for that amount, and authorized the Division of Child Support (DCS) to collect the judgment on Seefeldt's behalf. The trial court also awarded Seefeldt attorney fees of $4,022.48. The order provided that Coburn could purge the contempt by paying

---

[3] Contrary to Coburn's arguments, the trial court neither found him in contempt for failing to sign the APL enrollment contract nor ordered him to sign that document. And no evidence in the record supports Coburn's claim that APL will not accept payment from him unless he signs an enrollment contract and agrees to a liability waiver. The trial court also did not hold Coburn in contempt for "not filing a motion for arbitration."

the judgment owed and the two remaining tuition payments due for the 2023-2024 school year.

The court noted that, in accordance with the process set forth in the April 2022 order, there would be another opportunity to arbitrate school choice before high school. The court further observed that Coburn's only remaining remedy during middle school would be to file a motion to modify child support, which remained unchanged since entry of the final order in 2018, and could potentially change the parents' proportional shares of tuition going forward. The court stated that prefiling restrictions imposed on Coburn in May 2023 would not preclude such a motion.

Coburn appeals.

## II.    ANALYSIS

"If a parent fails to comply with a child support order, then a court may hold that parent in contempt." *In re Marriage of Didier*, 134 Wn. App. 490, 500, 140 P.3d 607 (2006). " 'Whether contempt is warranted in a particular case is a matter within the sound discretion of the trial court; unless that discretion is abused, it should not be disturbed on appeal.' " *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995) (quoting *In re King*, 110 Wn.2d 793, 798, 756 P.2d 1303 (1988)). "An abuse of discretion is present only if there is a clear showing that the exercise of discretion was manifestly unreasonable, based on untenable grounds, or based on untenable reasons." *Moreman*, 126 Wn.2d at 40.

## A.    Waiver of Arbitration

As he argued before the trial court, Coburn claims he invoked arbitration to

contest his financial responsibility for middle school tuition by promptly sending Seefeldt an e-mail message when he learned of her plan to continue enrollment at APL, stating, "I don't have the money.  Can't afford to live."  Coburn points out that nothing in the trial court's April 2022 order required a formal motion to arbitrate, and he argues that he reasonably construed the order to require only that he notify Seefeldt by e-mail.  Coburn also contends that the parenting plan governs disputes regarding support obligations and requires only "written notice of objection" within one week.  We disagree with each contention.

The court's April 2022 order, not the parenting plan, expressly governed this specific dispute about middle school enrollment and financial responsibility.  That order set forth the specific deadlines and requirements to resolve any dispute.  The order required Coburn to "request arbitration" or "invoke arbitration."  Coburn's e-mail message did not mention arbitration, let alone request it or invoke that process.  As the court pointed out, Coburn was aware of how to request arbitration, having filed a motion to arbitrate the previous year.  And contrary to his position on appeal, Coburn's response to the motion for contempt acknowledged that the April 2022 order governed the process for objection.  Coburn explained that he was unable to meet the May 1, 2023 deadline to request arbitration because he was "solely focused" on restoring his visitation at the time.

Substantial evidence supports the trial court's finding that Coburn waived arbitration of middle school enrollment and his obligation to pay his proportional share of tuition.[4]  *See In re Marriage of Rideout*, 150 Wn.2d 337, 351-52, 77 P.3d

_____

[4] Coburn's claims regarding the efficacy and appropriateness of APL's educational

1174 (2003) (this court reviews contempt findings for substantial evidence).

B.    Ability to Pay

Coburn contends the evidence did not support the trial court's finding that he was able, but unwilling, to comply with the child support order and the trial court ignored his inability to pay.

An obligor claiming an inability to comply with an existing support order must specifically provide evidence showing "due diligence in seeking employment, in conserving assets" and otherwise attempting to meet their obligations. RCW 26.18.050(4). And, as the trial court observed, a party may assert a defense to contempt if, through no fault of their own, the party is unable to comply with the court order. *Britannia Holdings Ltd. v. Greer*, 127 Wn. App. 926, 933-934, 113 P.3d 1041 (2005). But, contrary to Coburn's position, it is the party resisting a finding of civil contempt who bears the burden of production and the burden of persuasion regarding any claimed inability to comply with a court order. *Moreman*, 126 Wn.2d at 40. And the evidence that shows inability to comply must be "of a kind the court finds credible." Id. at 40-41.

Coburn failed to satisfy his burden to establish due diligence or inability to comply. In response to the contempt motion, Coburn supplied a spreadsheet, which apparently he created, with entries for "Net Pay" earnings and "Support

---

services may have been relevant had he arbitrated the issue of middle school enrollment and financial responsibility. But those arguments are not relevant to any issue related to the contempt order before us on appeal. And to the extent that Coburn raises issues about the punitive nature of the contempt sanctions and consideration of lesser sanctions, we decline to consider those arguments raised for the first time in his reply brief. *See* RAP 10.3(c); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Payments" between January 2021 and December 2022. He also submitted a single pay stub for one two-week period in December 2023. Accordingly, Coburn did not provide sufficient underlying documents that would substantiate his consistent income and his expenses, such as a financial declaration, tax documents, pay stubs, and/or bank statements, and allow the court to evaluate his ability to pay. *See* KING COUNTY SUPER. CT. LOC. FAM. L. R. (LFLR) 10(b) (documents to be submitted with a financial declaration). And while the trial court expressed some concern about the affordability of the tuition for the parents and frustration with Coburn's focus on "frivolous arguments" and issues that had been resolved, instead of providing documentation to support a potentially meritorious argument, the court did not abuse its discretion in determining there was no evidentiary basis to conclude that Coburn was unable to comply with the child support order.

C.     Unclean Hands

Coburn contends that Seefeldt did not have "clean hands" because, during the "same period" she was seeking to enforce the child support order, Seefeldt was "activity violating" the parenting plan's visitation provisions.

Coburn did not allege that Seefeldt failed to fulfill her own obligations under the child support order. And, as the trial court noted, any disputes involving visitation were unrelated to the parties' support obligations and did not provide a legal basis to excuse Coburn's obligation to pay his share of education expenses. *See McKelvie v. Hackney*, 58 Wn.2d 23, 31, 360 P.2d 746 (1961) (unclean hands equitable doctrine may disqualify an individual from seeking relief if the alleged

inequitable behavior concerns the same matter that is the subject matter of the complaint).  The trial court did not abuse its discretion in rejecting Coburn's "unclean hand" defense.

D.    Garnishment

Coburn also challenges the contempt order because (1) DCS refused to collect his share of tuition through garnishment, and (2) the contempt order effectively amounts to a ruling that statutory limits on garnishment do not apply.

Coburn's obligation under the child support order was unaffected by whether or not DCS agreed to collect Coburn's share of tuition expenses.  And Coburn provides no authority suggesting that DCS was legally required, or authorized, to enforce his tuition obligation when no specific monthly amount was set forth in a child support order.  *See* WAC 388-14A-3302(1),(5) (authorizing DCS to initiate a process, by serving a "notice of support owed" to set a fixed amount of support, which may then be enforced by DCS, but *only* for medical and child care expenses).

It appears that Coburn wants DCS to garnish his wages to collect both his support obligation and his share of tuition so that he may then argue that the total amount exceeds the limitations placed by federal law.  *See* 15 U.S.C. § 1673 (provision of Consumer Credit Protection Act placing limits on wage garnishment).  Coburn's argument fails to appreciate that (1) he did not provide evidence establishing that his share of tuition plus his monthly support obligation exceeds 50 percent of his disposable income; (2) any withholding order could not exceed 50 percent of his disposable income under Washington law, *see* RCW

26.23.060(5)(c) (any income withholding order issued by DCS must include a "statement that the total amount withheld shall not exceed 50 percent of the responsible parent's disposable earnings."); and (3) DCS need not garnish wages and may use other collection tools if wages are insufficient, such as asset seizure, liens, license suspension, contempt and federal income tax offset. *See* WAC 388-14A-4020 (listing collection tools that DCS may use). And again, Coburn's arguments primarily fail for the simple reason that DCS is not enforcing Coburn's obligation to pay educational expenses, nor is it required to do so.

E.    Appellate Attorney Fees

Seefeldt requests fees on appeal under RCW 26.18.160, under which a prevailing party in an action to enforce a child support order is entitled to costs, including reasonable attorney fees, and RCW 7.21.030(3), under which a court has discretion to order a person found in contempt to reimburse for losses and costs incurred in connection with the contempt. Because she is the prevailing party, subject to compliance with RAP 18.1, we award Seefeldt reasonable attorney fees and costs on appeal as required under RCW 26.18.160.

III.    CONCLUSION

We affirm.

Díaz, J.

WE CONCUR:

Chung, J.

Hazelrigg, ACJ

10