IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the marriage of | ) | No. 40864-7-III |
| | ) | |
| JUSTIN RICHARD SMITH, | ) | |
| | ) | |
| Appellant, | ) | UNPUBLISHED OPINION |
| | ) | |
| and | ) | |
| | ) | |
| MELANIE KYM SMITH, | ) | |
| | ) | |
| Respondent. | ) | |

HILL, J. — Justin Smith and Melanie Smith, now Vavra, have a parenting plan. The plan requires joint parental approval for major decisions involving education and non-emergency healthcare. Smith filed a contempt motion against Vavra alleging she violated the parenting plan in several ways. After a hearing, the commissioner denied Smith's motion, awarded Vavra attorney fees, and imposed a $1,000 civil penalty against Smith for bringing the motion without a reasonable basis.

Apart from Smith's contempt motion, Vavra filed a motion to compel Smith to sign passport documentation for their child. Vavra requested attorney fees for having to bring the motion. The commissioner granted Vavra's motion, awarded her attorney fees, and imposed another $1,000 civil penalty on Smith.

A judge confirmed the commissioner's rulings on revision and Smith appeals. In addition to challenging the court's findings, he argues he had a reasonable basis to bring

his contempt motion and to resist the passport motion and should not have been

sanctioned. We affirm.

FACTS

Justin Smith and Melanie Vavra essentially have an evenly split parenting plan.

The plan requires both parents to agree on major decisions for their child involving

education and non-emergency healthcare. The parents must resolve any disputes about

the meaning of the plan through mediation.

*February 2023 Contempt Motion*

To give context to the trial court's decision to sanction Smith, we reference a

similar motion Smith filed a year prior. In February 2023, Smith filed a contempt motion

alleging that Vavra failed to comply with the parenting plan by violating the joint medical

decision-making provision and a CR 2A agreement involving telephone contact. As to

the joint medical decision-making allegation, Smith claimed Vavra was pulling their

child out of school early for medical appointments without Smith's approval and

sometimes without notice. Smith also claimed that he was not authorized to view the

child's medical records because he was not listed on file as the father. As to the CR 2A

agreement, Smith alleged that Vavra twice ignored phone calls during the proper time

window without justification.

The commissioner rejected Smith's argument regarding joint medical decision-making because he failed to provide specific dates of the alleged violations. Additionally, the commissioner found that Vavra pulled the child from school early for routinely scheduled medical appointments and that Smith failed to respond when Vavra notified him of these appointments. The court also found that Vavra did not violate the CR 2A phone provision in bad faith because the agreement was ambiguous.[1] The court denied the contempt motion and ordered Smith to pay $750 in attorney fees for bringing the motion in bad faith.

Smith filed a motion to revise the commissioner's ruling. A judge denied Smith's motion, finding that (1) well-child checks and missing school for medical appointments are not joint decisions, (2) Smith failed to provide any dates for violations of the joint decision-making provision, (3) Smith had notice of appointments and chose not to attend, and (4) there was no evidence that Vavra prevented the release of medical records.

*May 2024 Contempt Motion*

In May of 2024, Smith filed the motion for contempt which is the subject of this appeal. First, he alleged Vavra violated the phone call provision of the CR 2A. This time, Smith provided 6 specific dates of alleged violations, all occurring in 2023.

---

[1] Specifically, the court believed the meaning of "unavailable" was ambiguous and that it was unclear whether this term strictly refers to emergency situations and a lack of

Second, Smith claimed Vavra violated the joint decision-making provision of the parenting plan by pulling the child from school on 6 different dates without reason or notice. Lastly, Smith alleged that Vavra violated the medical decision provision by scheduling and taking the child to a dental appointment without Smith's knowledge or approval. Smith later amended his contempt motion, claiming he obtained new evidence of Vavra violating the plan after he received discovery answers from the Central Valley School District (CVSD).[2] He alleged, citing several exhibits, that Vavra (1) removed him as the father from the school system, (2) had their child vaccinated without notice of approval, and (3) took their child out of school for "false/manufactured reasons." Clerk's Papers (CP) at 188.

*Contempt Hearing*

After a hearing, the commissioner denied the contempt motion. The commissioner expressed his frustration with Smith for bringing the motion when the court had essentially decided the same issues the prior year. The commissioner awarded Vavra attorney fees and imposed on Smith a $1,000 civil penalty.

---

cell service. CP at 124.

[2] The child attended school in this district, and Vavra worked at their child's school. CP at 154.

*Motion to Require Passport Signature*

Contemporaneous with Smith's contempt motion, Vavra filed a motion to compel

Smith to sign passport documentation for their child after mediation on the issue failed.

Vavra intended to travel with the child to other countries, and Smith refused to sign the

paperwork. Smith contested the motion, arguing he didn't trust Vavra based on past

disputes.

After a hearing, the commissioner found Smith had no legal basis to oppose

Vavra's motion. The court ordered Smith to sign the passport documentation and

sanctioned him another $1,000 penalty plus attorney fees.

*Motion to Revise the Commissioner's Rulings*

Smith moved to revise the commissioner's rulings. The judge adopted the

commissioner's findings and added some of her own. The judge wrote:

> [T]his court does not find Ms. Vavra in contempt for the missed
> phone calls because there is no showing of willfulness or bad faith.
> The court does not find Ms. Vavra in contempt for the educational
> decisions because pulling a child from school and requesting a specific
> teacher is not a joint decision requiring consent of both parents. The
> court does not find Ms. Vavra in contempt for taking the child to the
> dentist or getting an immunization because these decisions are routine
> day to day medical decisions not requiring joint decision making.
> The court does not find discovery from the Central Valley
> School District (CVSD) to support Mr. Smith's allegations of bad faith
> and/or collusion between CVSD and Ms. Vavra to violate his parental
> rights. The court finds Mr. Smith's behavior to be borderline abusive
> use of conflict and/or litigation.

CP at 395-96. The court then addressed the passport motion. The court found Smith's

opposition was only based on his mistrust of Vavra stemming from incidents related to

the contempt hearing and instances from 2017 and 2018. The court found Smith had no

valid basis to oppose Vavra's motion. The court once again adopted the commissioner's

ruling, including the sanction and attorney fees. Smith appeals.

LAW AND ANALYSIS

Smith argues the trial court erred by denying his contempt motion. In the

alternative, Smith argues even if Vavra was not in contempt, the attorney fee award and

sanctions are inappropriate because he had a reasonable basis to bring the motion. He

makes a similar argument regarding Vavra's passport motion.

When a contempt motion alleges a parenting plan violation, the court will strictly

construe the parenting plan and examine the party's conduct to determine if it constitutes

a plain violation. *In re marriage of Humphreys*, 79 Wn. App. 596, 599, 903 P.2d 1012

(1995). We review a trial court's entry of contempt orders for abuse of discretion.

*Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995). "An abuse of discretion is

present only if there is a clear showing that the exercise of discretion was manifestly

unreasonable, based on untenable grounds, or based on untenable reasons." *Moreman*,

126 Wn.2d at 40. We will uphold a trial court's contempt finding "as long as a proper

6

basis can be found." *State v. Hobble*, 126 Wn.2d 283, 292, 892 P.2d 85 (1995) (quoting

*State v. Boatman,* 104 Wn.2d 44, 46, 700 P.2d 1152 (1985)).  The trial court's factual

findings will be upheld if supported by substantial evidence, "which is evidence of

sufficient quantum to persuade a fair-minded person of the truth of the declared premise."

 *In re Marriage of Rideout*, 150 Wn.2d 337, 350, 77 P.3d 1174 (2003); *In re Yakima*

*River Drainage Basin*, 177 Wn.2d 299, 346, 296 P.3d 835 (2013).

Smith identifies nineteen errors within the trial court's written and oral findings.

As many of the assignments of error overlap, we consolidate them.

*Alleged Error 1*

In his first assignment of error, Smith disputes the trial court's finding that Vavra

obeyed the parenting plan and the reasonable contact phone provision in the CR 2A

agreement.  Smith references several exhibits he believes support his position.

*i. School Information System*

Smith alleges that Vavra removed his information from the school system and

restricted his ability to access school records.  He supports this argument with exhibits 1,

4, 5, 10, 11, 12, and 13.

Exhibit 1 is a copy of the demographics section of the child's school profile.

While the section displaying the father's information is blank, Vavra notes that her

information was also missing from this specific section.  Additionally, the full profile

provided by Vavra shows that Smith's information was listed in multiple other sections throughout their child's profile.

Exhibit 4 displays a webpage with Smith listed as his child's father in the online school platform, "PowerSchool," along with his contact information. CP at 227. Exhibit 5 is an e-mail from the school informing the students' parents about the "Google meets" platform, allowing the students to connect outside of class. CP at 228. Exhibit 12 depicts a student form with both Smith and Vavra listed as the parents, along with their contact information. These exhibits do not demonstrate any wrongdoing by Vavra.

As to exhibits 10, 11, and 13, Vavra concedes that she accidentally removed both her own and Smith's information from the system. But this was an ongoing issue among parents in the school district, according to an e-mail from a school district employee. Smith's access was restored within an hour of its accidental removal. A letter from the school principal confirmed this was a clerical error.

*ii. Vaccinations*

Smith next alleges, citing exhibit 2 as support, that Vavra took the child to receive vaccinations without his permission or approval. Presumably, Smith takes issue with the 4 vaccinations administered on September 2, 2020. Vavra contends that these vaccinations were mandated by the school and that Smith consistently ignored Vavra's notifications and offers for him to participate in medical decisions. Vavra states that she

took the child to medical appointments on her own, and that as of March 6, 2023, Smith never objected to appointments and only attended one regular office visit since 2019.

### iii. Removal from School

Citing exhibits 3, 7, 8, and 9, Smith asserts that Vavra improperly removed the child from school without his permission. These exhibits do not demonstrate anything beyond Vavra's removal of the child from school on certain days for medical appointments, illness, or other excused absences.

### iv. Additional school issues

Smith also contends that exhibits 6, 7, 9, 10, 11, and 12 show Vavra had inappropriate discussions regarding the child's education without Smith's involvement. These exhibits include correspondence between Vavra and the school about who is picking up the child, a meeting between Vavra and the child's teacher about the child's progress, and Vavra's request for the child to be placed with a particular teacher for fourth grade.

As to all of these alleged issues, Smith fails to show Vavra committed any violations of the parenting plan or that she acted in bad faith. The trial court's finding is supported by substantial evidence.

*Alleged Errors 2-7, 13, and 16*

Smith takes issue with the court's findings that his contempt motion bordered on being an abusive use of conflict or a violation of CR 11. However, we note the trial court did not make a formal finding of abusive use of conflict or a CR 11 violation on the contempt motion. Rather, the court stated that it would consider making such findings in the future if Smith filed another baseless contempt motion. We see no error in these findings.

*Alleged Errors 9-12*

Smith alleges the trial court erred by finding that Vavra did not violate the joint decision-making requirement of the parenting plan when she unilaterally requested the school place their child with a specific teacher, removed the child from school, and facilitated their child's immunizations and dental work.

We agree with the trial court that these are not major decisions requiring joint approval. The parenting plan only calls for joint decision-making if (1) the decision is major and (2) if the major decision falls into the stated category. Smith fails to demonstrate that any of Vavra's decisions were major.

*Alleged Errors 8, 14-15*

In these assignments of errors, Smith finds fault with the judge's decision to sanction him for opposing the passport motion. Smith argues he had a reasonable basis to

oppose signing the passport documentation because he did not trust Vavra based on various events dating back to 2017. He does not identify any portion of the parenting plan that would require his approval for the child to obtain a passport.

A court may impose sanctions upon a party who files a pleading, a motion, or a legal memo that is not warranted by existing law. *See* CR 11(a). The trial court did not abuse its discretion for sanctioning Smith for opposing the passport motion without a legal basis.

*Alleged Errors 17 - 18*

Smith takes issue with the commissioner's comments that an earlier court order indicated that either parent could take the child out of school for any reason. While Smith is correct that the commissioner mischaracterized the trial court's statement, we review the trial court's decision on revision, not the commissioner's. In any event, Smith fails to show that occasionally removing the child from school early is a violation of the joint decision-making provision of the parenting plan.

*Alleged Error 19*

Lastly, Smith believes the court misinterpreted the CR 2A phone call provision. The pertinent language reads as follows:

> The parties agree each party may have reasonable telephone contact with [Child] during the other party's residential time. Residential [time] shall be defined as every other day between 6 p.m. and 8 p.m. (unless either party is

> traveling where cell service is unavailable or there are other emergency circumstances) . . . A reasonable duration is defined as five minutes. If the child is unavailable when the non-residential parent calls, then the residential parent will have the child return the call the following day. The calls shall be unmonitored and unrecorded.

CP at 87-88.

A statute is ambiguous if it is susceptible to 2 or more reasonable interpretations. *State v. Hahn*, 83 Wn. App. 825, 831, 924 P.2d 392 (1996). Here, the meaning of the term "unavailable" is unclear as it can reasonably be interpreted to refer to "emergency situations" or to any other reason that the child cannot immediately answer a phone call. We agree with the trial court that the language of the order, specifically as to the meaning of unavailability, is ambiguous and that Vavra did not violate the terms in bad faith.

*Sanctions*

Lastly, Smith argues the court should not have sanctioned him for bringing the contempt motion. Like a trial court's contempt findings, its imposition of sanctions is also reviewed for abuse of discretion. *Washington State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 338, 858 P.2d 1054 (1993). If a party brings a motion for contempt without a reasonable basis, we must "order the moving party to pay to the nonmoving party, all costs, reasonable attorneys' fees, and a civil penalty of not less than one hundred dollars." RCW 26.09.160(7).

Here, Smith is unable to show the trial court abused its discretion when it sanctioned him for bringing the contempt motion. It does not appear Smith had a reasonable basis to bring the motion, particularly after the court addressed and dismissed most of the same claims during the previous contempt hearing.

CONCLUSION

The court's findings are supported by substantial evidence. The court did not abuse its discretion in making its contempt determination and passport ruling or for sanctioning Smith and requiring him to pay Vavra's attorney fees. We affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Hill, J.

WE CONCUR:

_____     _____
Lawrence-Berrey, C.J.            Staab, J.